EVA F. HUNT v. UNITED STATES FIRE INSURANCE COMPANY OF NEW YORK, A CORPORATION—193 S. W. (2d) 778.

Kansas City Court of Appeals.   February 11, 1946.

626

*Al Lebrecht, John W. Hudson, Alvin C. Trippe,* and *Hogsett, Trippe Depping & Houts,* for appellant (respondent), United States Fire Insurance Company.

*J. M. Loomis,* and *Orin J. Adams,* for respondent (appellant).

628

BOYER, C.—The above caption of this case results from the fact that both parties have appealed to this court from a certain judgment rendered in the case, and an agreement of the parties has been filed herein to consolidate the cases numbered as above and present them in one brief covering all points in both cases. Accordingly, both appeals will be disposed of in this opinion. For convenience, the parties will be referred to as plaintiff and defendant.

Plaintiff instituted this action in the circuit court of Caldwell County by filing her petition April 25, 1941. Due to other litigation hereafter mentioned the case was not reached for trial until March 29 1944, at which time it was tried upon amended pleadings by both parties. By plaintiff's amended petition, the sufficiency of which is unquestioned, recovery was sought upon a fire insurance policy issued by the defendant on the 14th day of January, 1940, by which plaintiff was insured against loss by fire in the amount of $1000 upon her dwelling situated in the town of Breckenridge. It was alleged that the house was totally destroyed by fire on the 18th day of September, 1940, while the policy was in force; that plaintiff had complied with the conditions of the policy; that plaintiff demanded payment for said loss under said policy; that defendant refused to pay, which said refusal was asserted to be vexatious under the facts stated. Plaintiff demanded judgment for the amount of the policy, together with damages and attorneys' fees.

The amended answer of defendant admits the issuance of the policy in question whereby it insured plaintiff's house against loss by fire in the amount of $1000, and admits that the house was destroyed by fire, but denies each and every other allegation in the petition. Further answering, the defendant sets forth various provisions of the policy; the particular ones upon which reliance is placed in this appeal read as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein.

". . . This entire policy, unless otherwise provided by agreement indorsed or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple . . . or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance whether by legal process or judgment or by voluntary act of the insured, or otherwise. . . ."

The answer further alleges that prior to the fire and on August 19, 1940, "plaintiff entered into a certain contract for the sale of the property to one Jesse L. Walker for a consideration of $500.00 and received as a deposit on said sale the sum of $50.00. . . . That

said contract for sale was in full force and effect at the time of said fire and the purchaser had taken possession of said property . . . ; that by reason of the foregoing contract and facts, and of such expressed and specific terms and provisions of said policy, there was no insurable interest in the plaintiff, Eva F. Hunt, at the time of said fire, and that by reason thereof the policy was wholly void at the time of the fire, and that plaintiff is not entitled to maintain any claim under said policy. . . . '' The answer further states that defendant did not learn of the sale of the property until after the fire, and on the 27th day of March, 1941, denied liability under the policy on account of the fire, and at said time duly tendered return of the full premium paid by plaintiff for said policy, together with interest thereon; that the tender was refused and that defendant again makes such tender.

For reply, plaintiff admits that the policy contained the clauses set out in defendant's amended answer; but denies that she entered into any contract of sale or that she received any deposit on said sale and denies that said alleged contract of sale was in force and effect at any time; and denies that the alleged purchaser was in possesion of the property; and further reaffirms her sole ownership of the property and that no change of any kind had taken place in her ownership or insurable interest; that she at no time made any fraudulent representations to the defendant or breached or violated any conditions of the policy; that the policy was in full force and effect at the time of the fire, and prayed judgment according to her petition.

A summary of the evidence, particularly relevant to points raised on appeal is the following: Plaintiff testified that the name of her husband was L. W. Hunt; that she and her husband had lived in Kansas City for approximately six years and prior thereto lived in the house in question in Breckenridge; that she owned the property and the title thereto was in her name. The policy of insurance on the house was identified and offered in evidence, a photostatic copy of which appears in the transcript. By its terms, defendant insured Eva F. Hunt for a term of one year from the 14th day of January, 1940, for all loss or damage by fire in an amount not exceeding $1000 on the property described therein as a one and one-half story shingle roof frame building located on ground described as a portion of Block 6 in the Third Wisconsin Addition to the town of Breckenridge. It was required to be countersigned by an authoried agent of the Company, and appears to have been so countersigned and issued by the local agent of the Company. After the issuance of the policy there was a small fire which caused some loss about September 4, 1940, and thereafter on September 18, occurred the fire which occasioned a total destruction of the house. Plaintiff testified that the Company, or the agent, was notified that there had been a fire which destroyed the house, and that some one came to see her about it. She could not

fix the date or remember the conversation had at the time, but thought it was some one from the Western Adjustment and Inspection Company from Kansas City; that they talked about the destruction of the house; that thereafter she received a letter from the Western Adjustment and Inspection Company which was identified and offered in evidence. The letter was written on the stationery of the Western Adjustment and Inspection Company and, omitting caption, reads as follows:

"March 27, 1941

"Mrs. Eva F. Hunt,
 3564 Penn
 Kansas City, Mo.

Re: U. S. Fire
    Insurance Company
    Policy No. 1081
    Eva F. Hunt, Assured
    Fire Loss 9-4-40

"Dear Madam:

"We respectfully deny any and all liability under such policy on account of the above described fire. Such policy was void at the time of the fire because of a certain agreement, dated August 19, 1940, by and between you and one Jesse L. Walker for the sale of the property to the said Jesse L. Walker. As a result you were not the unconditional and sole owner of the property at the time of the fire and there was no insurable interest in you at the time of the fire with respect to the property described in such policy.

"Accordingly, we hereby and herewith tender to you the entire premium upon such policy together with interest thereon at the rate of 6% per annum from the date of the issuance of the policy, our check in the amount of $7.53 covering such premiums and interest being enclosed herewith. If there is any objection to the tender being made for check please advise us and we shall make a tender with cash. Other reasons for denying liability may develop as our investigation progresses.

"Very truly yours, 
U. S. Fire Insurance Company
By A. M. Rossman Jr.
Its Adjuster

"Registered—to be delivered to addressee only—return receipt requested."

Over the objection of defendant, plaintiff was permitted to show that the defendant instituted a proceeding in the circuit court of Jackson County at Kansas City on April 14, 1941, wherein defendant sought a declaratory judgment, and that plaintiff was served with

summons bearing that date. The petition and summons were offered in evidence. In that petition the defendant sought to have the policy of insurance declared void for the alleged reason that plaintiff had violated the terms of the policy on account of her contract for sale of the property prior to the fire. Plaintiff further testified that she employed attorneys to represent her in that case; that she had not done anything herself to dispose of the property, and that she still owned it. On cross examination, plaintiff stated that she and her husband had moved out of the property about six years before and after they moved out the property was rented; that Mr. Stucker, a local real estate dealer, attended to the collection of the rent; that after they moved to Kansas City her husband did not have anything to do with looking after the property, but that it was in her hands; that they talked over things about it and they did not want to sell at the time they first left Breckenbridge because they thought they might go back; that later she and her husband talked over the question of sale of the property in a general way, whether they should sell or not; that there had been some offers to buy the property, one by the tenant; that she did not write to Mr. Stucker about the sale, but her husband might have done so; that she may have told her husband to write to Mr. Stucker but she did not remember because it was so long ago. She was then examined in reference to certain testimony she gave in a deposition which had been taken in the declaratory judgment action by the defendant. Her answers in the main were that she did not remember because the deposition was taken in 1941. She was asked in the deposition whether or not she ever requested Mr. Stucker to find a buyer for the property. She said she did not do so herself; that she might have requested her husband to do it, but she did not remember. Plaintiff was then asked if Mr. Hunt wrote Mr. Stucker about selling the property and said: "I suppose he did," and "I guess so." When asked whether or not she approved of her husband writing Mr. Stucker to sell the proeprty she said: "Well, I did in some things. I don't know what letters were written." She said they had talked it over and thought they ought to sell; that she did not tell her husband what to write, but thought she approved of the terms of sale; that the offer was made and they decided to accept it; that her husband carried on the negotiations and the offer was made through Mr. Stucker to Mr. Hunt about the terms and how it was to be sold. She was permitted to state that it was with her approval, over the objection of plaintiff's counsel that there was no authority in writing authorizing any agent to act for her. She further testified that there was an offer made by Mr. Walker on the 19th of August to purchase the property. Defendant's counsel made various offers of proof in regard to the terms of the proposed sale and whether or not the offer by Stucker was made to her husband in her behalf for the sale of the property. On objection of

plaintiff's counsel, and after plaintiff testified she did not authorize Mr. Stucker or her husband or any one else in writing to make any offer and contract for her, the court said: "Well, she authorized her husband to do it." Upon insistence of defendant's counsel that even though the authority was not in writing it could be ratified orally, the court permitted the further following examination: "Q. I just asked you if the offer was made and read the offer? A. Yes. Q. Was that offer made? A. Yes, I guess it was. Q. It was made to your husband on your behalf, did you accept that offer?" And after renewed objection to the term "on her behalf" the following questions and answers: "Q. Did you accept that offer? A. I did. Q. Did you receive the fifty dollars? A. The fifty dollars was— Q. (Interrupting) Just a minute. I asked you a question. A. We received fifty dollars, yes." Plaintiff identified her husband's signature to certain letters which were presented to her and stated again that she never gave her husband any written authority to write the letters. A number of such letters written by plaintiff's husband to the real estate agent, as well as the purported contract of sale, were identified and received in evidence over the objection of plaintiff that the letters were written and the alleged contract executed without written authority so to do in behalf of plaintiff. The contract upon which defendant relies as constituting a sale of the property and a breach of the terms of the contract of insurance is the following:

"*Contract for the Sale of Real Estate.*

"This Contract made and entered into by L. S. Hunt party of the first part and Jesse L. Walker & Leona Walker his wife parties of the second part.

"Witness—: That the party of the first part has this 19th day of August 1940, sold to the parties of the second part his property in Breckenridge, Mo., consisting of Lots 1 & 2 in Block 6, Third Wisconsin Add. for the consideration of $500.00 net, second parties to assume and pay the 1940 taxes, also to pay D. W. Stucker $1500 commission. Party of the first part is to furnish a Warranty Deed and Abstract and transfer the property clear of all indebtedness except the 1940 taxes. The parties of the second part to pay $50.00 down the receipt of which is hereby acknowledged. The balance of $450.00 to be paid as soon as Deed and Abstract can be made and forwarded.

"Possession to be given on or before Oct. 1, 1940.

"Signed   Jesse L. Walker

D. W. Stucker, Agent."

Plaintiff further testified that she did not notify the Company about the sale of the property because it had not been sold. In reference to notification about the fire, plaitniff stated her husband called the agent up a night or two after the fire. Plaintiff's testimony further shows that she and her husband had talked about selling the property and had agreed to do so and that she was aware that her

husband was carrying on some transactions in reference to it, and that she approved of her husband taking care of the business; that she knew he was writing, but did not know the contents of his letters; that she had never made a deed to the property and still owned it. In reference to the fifty-dollar payment made by the proposed purchaser, plaintiff said she never had it in her possession, but that she and her husband had it together jointly and that it was later returned. Other evidence shows that plaintiff's husband returned this payment to Mr. Walker after the fire. The above is not all of plaintiff's testimony, but it contains all of that part upon which defendant places particular reliance to show that she had agreed upon and authorized a sale of the property.

One of plaintiff's counsel testified in great detail in reference to legal services rendered in behalf of plaintiff in the declaratory judgment suit and various subsequent proceedings incident to the history of that case. In general outline these things transpired: "The motion of plaintiff to stay the proceedings in the declaratory judgment case was sustained by the judge of the circuit court in Kansas City before whom it was pending, partly upon the ground that it was instituted in bad faith. Thereafter, defendant instituted a proceeding in *mandamus* in the Kansas City Court of Appeals for the purpose of having the court require the circuit judge to reinstate the case and to permit same to go to trial. The writ applied for was denied by the Court of Appeals and after motion for rehearing was denied, defendant applied for a writ of *certiorari* to the Supreme Court. This application was denied. A writ of *mandamus* similar to that sought in the Kansas City Court of Appeals was sought in the Supreme Court. The writ was denied and the result of that action, as well as some of the history of the cause, is shown in State ex rel. v. Terte, 351 Mo. 1089, 176 S. W. (2d) 25. The depositions of plaintiff and her husband were taken in the declaratory judgment suit at the instance of defendant. Witness stated that he was familiar with what would be reasonable and fair compensation for services rendered to Mrs. Hunt in all of said proceedings, and that $1500 would be a reasonable attorneys' fee. All of the foregoing testimony of plaintiff's counsel was offered on the theory that it was relevant to the question of vexatious refusal to pay, and over the objection of defendant that it was wholly incompetent and irrelevant to any issue in the case.

The defendant called Mr. Stucker, the real estate agent, who testified that he lived in Breckenridge in 1940, and was engaged in the real estate and insurance business; that he knew Mr. and Mrs. Hunt; that he looked after the collection of rent for their residence and their store building; that he collected the rent for Mr. Hunt and sent it to him; that he had correspondence with Mr. Hunt relative to the sale of the property; that he talked to Mr. Hunt and wrote him a letter

about it; that the tenant had made an offer on he place. He identified a letter he had received from Mr. Hunt about the sale to the tenant and said he presented the offer to him; that he later talked to Mr. Walker about buying the place and wrote Mr. Hunt a letter and told him Mr. Walker would take the place. He identified a letter which he had received from Mr. Hunt in reply to his letter, and after submitting the terms to Mr. Walker he entered into the agreement heretofore referred to; that he mailed a copy of the contract to Mr. Hunt; that he received fifty dollars from Mr. Walker and sent a money order for that amount to Mr. Hunt; that Mr. Walker never moved into the property, but after their agreement Mr. Walker's wife was there and did some work cleaning up the house and he had a man there to do some work on the house. Witness testified that after he got Mr. Hunt's letter about the terms of the contract, Mr. Walker agreed to take the place on those terms and that he, Mr. Sucker, signed the contract as agent for Mr. Hunt, and that any authority he ever had to do any business was from Mr. Hunt; that he had all his talks with him and all letters he received were signed by Mr. L. W. Hunt; that he never at any time had any written authority from Mrs. Hunt in regard to disposal of the property; that he did not know Mrs. Hunt owned the property, but thought Mr. Hunt owned it; that the balance of the purchase price was to be paid when a deed and abstract were furnished to the property, but they were never furnished; that he never completed the transaction because he didn't have a chance as the house burned down.

Mr. Maupin testified that he lived in Breckenridge; that he knew the Hunt property; that he did some work on it in August or September, 1940; that he took some plaster off the kitchen and replastered; that this was done at the request of Mr. Walker.

Mr. Walker testified that he negotiated with Mr. Stucker in August 1940, for the purchase of the property; that he made an offer to purchase it; that he did not know what transpired between Mr. Stucker and the Hunts; that he paid fifty dollars to Mr. Stucker; that he signed the contract in evidence and paid the fifty dollars mentioned therein; that after signing the contract he went upon the property but he could not say when; that there was a family living in the house at the time; that he didn't do anything but just looked at the property; that his wife was there and did some cleaning up, and he said he had Mr. Maupin there one day preparing to do some other work; that he had no conversation with Mr. Hunt about taking possession and that he had not taken possession of the property, but the man he had doing some work on the house was there and he understood from Mr. Stucker that it would be all right to go ahead; that he paid fifty dollars to Mr. Stucker and later got it back after the fire; that he never got a deed to the property and never took possession of it. The foregoing recital is in substance all the evidence, and it may seem

to be unduly extended until the points raised on appeal are brought under consideration.

At the close of plaintiff's evidence and at the close of all the evidence, defendant requested peremptory instructions in the nature of a directed verdict in its favor which were overruled and the case was submitted to the jury upon instructions given in behalf of both parties. The verdict recited that the jury found the issues for the plaitniff and assessed her damages in the sum of one thousand dollars with interest in the sum of $202; and the jury further found that defendant's refusal to pay was willful and without reasonable cause and found for plaintiff in the further and additional sum of $100 as penalty, and for the further and additional sum of $800 as attorneys' fees. Defendant filed a timely motion for a new trial. Before this motion was passed upon the trial judge had been succeeded by another who considered and passed upon the motion. It does not appear from the record that any judgment was entered until the motion was disposed of by the court, at which time the new judge entered the following order and judgment:

"Defendant's motion for new trial sustained as to the issues as to damages for vexatious delay and for attorney's fee, for the reason that the giving of plaintiff's instruction No. P-2 was error and because under the evidence the question of vexatious refusal should not have been submitted to the jury. Motion for new trial overruled on the issue with respect to right of recovery for damages for the amount due plaintiff for the destruction by fire of the property covered by the policy sued on. Judgment for plaintiff and against defendant on the verdict, together with interest thereon to the date in the total sum of $1,263.37, the same to bear interest at this date at the rate of six per cent per annum and judgment against defendant for costs."

The defendant entered an exception to this order and judgment at the time and duly filed notice of appeal to this court from the judgment so entered. Plaintiff also filed a notice of appeal from the judgment "as to the issues as to damages for vexatious delay and attorney's fees."

The first assignment of error and point presented in defendant's brief for consideration is that the court erred in entering up a new judgment upon sustaining defendant's motion for new trial on the grounds mentioned by the court without any new trial being had.

As will hereafter appear, the court erred in sustaining the defendant's motion on the ground mentioned. No other ground for new trial sufficiently appears in the record and the court was without authority to enter any judgment except one in accordance with the finding of the jury. The court had no authority to reduce the amount of the verdict without giving plaintiff the opportunity to make a remittitur as a condition for overruling the motion for new trial. [Cazzell v. Schofield, 319 Mo. 1169, 1195.] Plaintiff's appeal is in

effect an appeal from the foregoing judgment depriving plaintiff of the amount allowed by the jury as damages in the case.

The next error and point presented is based upon the refusal of the court to sustain defendant's demurrer to the evidence and direct a verdict in its favor. Defendant here presents its chief argument to sustain the defense of forfeiture of the policy as pleaded in its answer. The point and the argument rest upon the assumption that the evidence shows plaintiff had contracted to sell and sold her property during the pendency of the policy and thereby occurred a change in the interest, title and possession of the property in violation of the terms of the policy. To sustain this contention, defendant places chief reliance upon the alleged contract of sale which was introduced in evidence, and the testimony of plaintiff tending to show that she and her husband agreed they would sell the property on stated terms; that she was aware her husband was in communication with the real estate agent and approved his action. Even so, there is no evidence whatever that the plaintiff ever signed any written agreement to sell her property as alleged in the answer or that she ever authorized her husband, the real estate agent, or any one else, *in writing*, to take a contract of sale for her. The only evidence on that subject is her positive statement that she did not authorize any one, *in writing*, to sell the property in question, and that it was never sold.

Section 3354, Revised Statutes Missouri 1939, provides in part that "no action shall be brought . . . upon any contract for the sale of lands . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." Under the above provision and the evidence in this case, we think it obvious that there was never any valid and enforceable contract binding upon the plaintiff for the sale of the property. Notwithstanding the fact that she was willing to sell the property and that she knew her husband was writing to the real estate agent informing him that the terms of purchase offered were acceptable, nevertheless the real estate agent had no adequate authority to sell plaintiff's property under the terms of the foregoing statute and his contract could not be enforced against plaintiff, and it would be wholly inadequate to enable the proposed purchaser to enforce the provisions of the contract.

In the case of Kirkpatrick v. Pease, 202 Mo. 471, l. c. 489, 101 S. W. 651, the husband of the owner of land wrote to her agent to sell. She advised with him about the letter, read its contents, and it went with her approval. Nevertheless, it was ruled that under the statute the agent had no lawful authority to sell the land. During the trial defendant offered certain evidence tending to show oral ratification

of the contract in question, and defendant here claims that the contract was ratified by virtue of the payment and receipt of fifty dollars upon the purchase price. Oral ratification is not available because ratification of the unauthorized contract in this case to be effective. as such must also be in writing and of equal status and dignity with a writing that would authorize a sale by an agent. [Johnson v. Fecht, 185 Mo. 335, 345, 83 S. W. 1077; Hawkins v. McGroarty, 110 Mo. 546, 19 S. W. 830.] There could be no ratification other than in writ-. ing, except where a case presents elements of equitable estoppel such as appeared in the case of Kirkpatrick v. Pease, *supra*. If plaintiff had actually received part or all of the purchase money called for in the alleged contract that would have been insufficient to raise an unauthorized contract for the sale of land out of the bar of the statute, and the proposed purchaser could not enforce the unauthorized contract. [Lydick v. Holland, 83 Mo. 703; Devore v. Devore, 138 Mo. 181, 39 S. W. 68; Davis v. Falor, 346 Mo. 514, 517, 142 S. W. (2d) 76.] The proposed purchaser under the alleged contract of sale acquired no enforceable interest in plaintiff's property and there was no change of interest, title or possession of the property sufficient to constitute a forfeiture of the policy under its terms. Whatever possession the proposed purchaser ever took or had of the property was solely in pursuance of his arrangement with the agent who had no authority to sell or give possession. Defendant was not entitled to an instructed verdict for the reasons assigned and there was no error on the part of the trial court in refusing its demurrer. We do not intend to imply that even though the contract of sale were binding upon the plaintiff, her ownership would not have continued to be unconditional and sole, within the meaning of the policy. We are not passing on that question.

There is a judicial policy of long standing to the effect that a plea of forfeiture in cases of this character is not received with favor. It is in fact looked upon with disfavor, and somewhat as a suspect in the family of reputable pleas. Its conception and origin are critically examined to ascertain its true value. Genealogically, it is not accorded the status of a blood brother to other valid pleas and is not accepted until its legitimacy is firmly established under existing rules of law applicable to adequate proof made in the case. If there is a lawful way open to defeat a claimed forfeiture the courts will employ it as the interest of justice may seem to require and to the end that an unsuspecting insured may not be deprived of the protection purchased. [Mathews v. Modern Woodman, 236 Mo. 326, 343, 139 S. W. 151.]

Defendant assails plaintiff's Instruction P-1 because it authorized a verdict without permitting the jury to determine depreciation in the dwelling between the time the policy was issued and the time of the fire. The instruction directed the jury that if it found for plaintiff

upon the hypothesized facts that defendant insured plaintiff's house for $1000, that she owned the house, and that it was totally destroyed, then the verdict should be for plaintiff in the sum of $1000. There is no mention of the question of depreciation. Defendant insists that the instruction should have conformed to the measure of damages prescribed in Section 5930, Revised Statutes Missouri 1939, which provides that in case of total loss of property insured the measure of damage shall be the amount for which same is insured, less whatever depreciation in value below the amount for which the property is insured the property may have sustained between the time of issuing the policy and the time of the loss. This section also provides that the insurer shall not be permitted to deny that the property insured was worth at the time of the issuing of the policy the full amount of insurance issued thereon, and that the burden of proving depreciation shall be upon the defendant. Plaintiff insists that inasmuch as the burden was upon defendant to show depreciation and the defendant offered no evidence on the subject, the instruction is not subject to the criticism made because there was no evidence upon which the jury could determine depreciation. Defendant does not claim that it offered any evidence of depreciation, but insists that the testimony of plaintiff to the effect that she was willing to sell the property on the terms proposed in the alleged contract constitutes evidence of depreciation. We do not think that plaintiff's statement of her willingness to sell the property for a stated amount is evidence of depreciation upon which the defendant could rely. Under the statute above mentioned the defendant cannot deny that the property was worth $1000 at the time of the issuance of the policy. It is not a question of value upon which the defendant might rely to reduce its liability under its policy, but it is a question of depreciation of the property which the defendant was obligated to show if it sought any advantage therefrom. There is no showing whatever in this case as to how, when or in what respect plaintiff's house depreciated in value from the time the policy was issued until the time of the loss. As stated by the court *en banc,* in the case of State ex rel. Insurance Company v. Cox, 307 Mo. 194, 201: "In insurance on real property, in case of total loss, the measure of damage shall be the amount for which the same was insured less depreciation, and *the burden of proving depreciation is on the defendant.*" In view of the foregoing, we rule that there was no error in plaintiff's Instruction P-1.

Defendant contends for error in plaintiff's Instruction P-2, which presents to the jury the issue of vexatious refusal to pay. It authorized the jury to assess damages not exceeding ten percent on the amount of the loss and a reasonable attorneys' fee if it found that the Company refused to pay plaintiff's loss, and that such refusal was willful and without reasonable cause as the facts appear to a reasonable and prudent man *before the trial.*

The criticism of the instruction is that it is erroneous because the issue of vexatious refusal to pay depends upon the facts as they appeared *prior to the institution of the suit* and not *prior to the trial.* In this connection, defendant insists that the court erred in admitting evidence of its declaratory judgment suit and of the work done by plaintiff's counsel in connection with that action and subsequent proceedings, a large part of such work being performed after plaintiff filed her suit. To sustain its position that the jury should have been limited to a consideration of the facts as they appeared before the suit was filed instead of before trial, defendant relies chiefly upon certain statements contained in the following decisions of this court: [Evans v. Great Northern Life Ins. Co., 167 S. W. (2d) 118; Butler v. Equitable Life Assurance Society of the United States, 93 S. W. (2d) 1019, 1026; and Jurkiewicz v. Millers' Nat. Ins. Co. of Chicago, Ill., 76 S. W. (2d) 721, l. c. 724.] The first of these cases, read in its entirety, does not support defendant's view. It was made to appear, as shown in the course of the opinion, that the defendant there resorted to unwarranted legal obstruction by seeking prohibition after the suit was filed. The other two cases contain statements to the effect that the question of penalty for vexatious delay must be determined by the attitude and conduct of the defendant before the suit was brought, but such statements are not in accord with pronouncements in Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 210 S. W. 42, and Aufrichtig v. Columbia National Life Ins. Co., 298 Mo. 1, 16, 249 S. W. 917, also cited by defendant, and both of which cases adopt the rule announced by this court in Patterson v. Insurance Co., 174 Mo. App. 37, l. c. 44, to the effect that the question of vexatious refusal to pay should be determined as the facts appear to a reasonable and prudent man *before the trial.*

Section 6040, Revised Statutes Missouri 1939, and similar predecessor sections have been under review innumerable times and many cases may be considered with interest and profit on the subject of what constitutes vexatious delay and the general rules applicable to the determination of such issue by the jury. One of the earliest cases decided by the Supreme Court is Brown v. Railway Passenger Assurance Co., 45 Mo. 221. In the course of the opinion as shown on page 227, the court said: ''The whole question of vexatious refusal or delay is a matter of fact to be determined by the jury. They must make up their verdict on this issue by a general survey of all of the facts and circumstances in the case; and if, upon a full consideration, they conclude that the refusal was unjustifiable and vexatious, the law authorizes them to assess the damages.'' This declaration of the law was quoted in the case of Fay v. Aetna Life Insurance Co., 268 Mo. 373, 389, 187 S. W. 861. In the course of the opinion in the Fay case, *supra,* we find express authority that the conduct of defendant in resisting payment is not necessarily confined to its actions

prior to the filing of suit on the issue of vexatious refusal to pay. In that case defendant changed its pleading so as to obviate a question of fraud which had been raised in reference to the procurement of a release. The plaintiff proved these pleadings on the theory that they tended to show a vexatious delay in payment. The court ruled that the evidence was competent and that the jury was entitled to all these facts and that they might conclude that the issue of fraud in the settlement was skillfully withdrawn in defendant's last answer to obviate a trial of an issue which the defendant feared, "and the jury might reasonably conclude that this was but another link in the chain of vexatious delay." Another instructive case in Keller v. Insurance Co., 198 Mo. 440. In the case of State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 1095, 298 S. W. 83, we find this expression: "The vexatious obstruction or delay ordinarily must occur, or begin, before the filing of the suit." The author of that opinion cites the Fay case, *supra*.

The latest Supreme Court cases decided *en banc* that have come to our attention are State ex rel. Continental Life Insurance Co. v. Allen, 303 Mo. 608, 621, 262 S. W. 43, and State ex rel. Missouri State Life Insurance Co. v. Allen, 295 Mo. 307, 320, 243 S. W. 839. Both of these cases make specific reference, with approval, to the rule announced by this court in the Patterson case, *supra*. There is no Supreme Court decision called to our attention or which we have been able to find which has announced any rule contrary to that in the Patterson case, *supra,* that in determining vexatious delay the jury may consider the facts as they would appear to a reasonable and prudent man *before trial.* In view of the foregoing decisions, any appellate court case announcing a different standard of conduct or the time at which vexatious delay is to be determined cannot be regarded as authority and should not be followed.

Under authority of the Fay case, *supra,* testimony of obstructive and unwarranted legal proceedings by the defendant, and concerning the amount and value of attorneys' fees for plaintiff's counsel in connection therewith was all competent evidence. The record reveals that defendant's declaratory judgment action was filed prior to the institution of plaintiff's suit and that it thereby began a long course of obstructive maneuvers; and after said action was stayed pending a trial of plaintiff's suit defendant elected not to abide the result and make its defense, if it had any, in the ordinary course of procedure, but resorted to numerous legal actions, all of which proved to be without merit as shown by the results, the effect of which was to delay the trial of plaintiff's case for about three years after it was instituted.

In addition to the foregoing there are some features of this case which indicate, and from which the jury could find, that the defendant's denial of liability and its defense pleaded in the answer were not made in good faith. The fire occurred September 18, 1940.

A day or two thereafter, defendant's agent had notice of the loss. It then became the duty of defendant to investigate the facts, but it made no denial of liability until March 27, 1941, by its letter to plaintiff in which it stated that the policy was void because of a certain agreement dated August 19, 1940, by and between plaintiff and Jesse L. Walker for the sale of the property. Evidently the contract referred to in the letter and in the answer filed by defendant was the contract which was introduced in evidence. That contract, on its face, shows it is not a contract between plaintiff and Walker, but that it purported to be a contract by L. W. Hunt in which he agreed to sell "his property." The contract was signed by D. W. Stucker as agent. An examination of this contract and inquiry from the real estate agent would have revealed all of the facts to defendant in reference to the authority under which the contract was executed, as shown by the evidence in this case, and defendant would have known that the contract was executed without legal authority from the plaintiff.

From all the evidence, we have no doubt whatever that plaintiff was entitled to submit to the jury the issue of vexatious refusal to pay and that the jury was authorized to find that the obstrucion and the delay occasioned by the defendant were willful and without reasonable cause and to assess the damages authorized by the statute. [Sec. 6040, R. S. Mo. 1939.] Under the foregoing authorities, we conclude that there was no error in the admission of evidence relative to vexatious delay and that the court erred in holding that plaintiff was not entitled to submit that issue to the jury, and that plaintiff's Instruction P-2 was not erroneous for the reason assigned by defendant.

Defendant also complains of Instruction P-4 which was the form of verdict submitted to the jury by the court. It reads as follows:

"The court instructs the jury that if your finding and verdict is for the plaintiff, it may be in the following form (Omitting caption): We, the jury, find the issues herein for the plaintiff and assess her damages in the sum of $1,000, together with interest thereon in the sum of $————. We, the jury further find that defendant's refusal to pay plaintiff's loss has been willful, and without reasonable cause, and we find for plaintiff in the further and additional sum of $———— as penalty, and for the further and additional sum of $———— as attorney's fees.

"Signed ........................
Foreman."

The criticism of the instruction is that the court invaded the province of the jury in directing it to find for plaintiff in the sum of $1000, if the verdict was for plaintiff, and also intimated that the verdict should be for damages as well as recovery on the policy. There was no error in directing the jury to find for plaintiff in the sum of $1000 if the verdict be for plaintiff; nor do we believe that a

jury would be misled, or that the jury in this case was misled, by the form of the verdict presented to it in believing that it was required to find damages if it also found for plaintiff on the policy. The verdict actually rendered by the jury is in the following words:

"We, the jury find the issues herein for the plaintiff and assess her damages in the sum of One Thousand Dollars, together with interest thereon in the sum of $202.00.

"We, the jury further find that defendant's refusal to pay plaintiff's loss has been willful, and without reasonable cause, and we find for plaintiff in the further and additional sum of $100.00 as penalty, and for the further and additional sum of 800 dollars as attorneys fees."

The foregoing verdict was unanimous and signed by the foreman. We think that, under all of the circumstances, it cannot be said that the jury did not find the facts necessary to be found in order to assess the damages permissible under the statute (Sec. 6040, R. S. Mo. 1939), and that the form of the verdict submitted to the jury, while not as clear as it might have been, was not reversibly erroneous; particularly when read in connection with Instruction P-2, which specifically directed the jury how and when it was permissible for it to allow damages for vexatious refusal to pay.

The conclusion upon the whole record in this case is that the defendant has not shown any prejudicial error in the trial of the case materially affecting the merits. We are further of opinion that upon the evidence plaintiff was entitled to recover her loss under the policy as a matter of law because of the admissions of the defendant in respect to its contract of insurance and the total loss of the property insured; and because of its failure, as a matter of law, to make a *prima facie* showing of any defense to plaintiff's action. This on the principle that when it appears plaintiff has a cause of action and defendant pleads an affirmative defense which it fails to sustain, plaintiff is entitled to judgment. The principle has been announced often. [Place v. Parker, 180 S. W. (2d) 538, l. c. 544; Ford v. Dyer, 148 Mo. 528, 541, 40 S. W. 1091; Magoffin v. The Missouri Pacific Ry. Co., 102 Mo. 540, 15 S. W. 76; Wolff v. Campbell, 110 Mo. 114, 120.] It is unquestionably the law that where the evidence in a case shows as a matter of law that plaintiff is entitled to recover and the proof is unimpeached and uncontradicted, plaintiff would be entitled to a peremptory instruction. [Coleman v. Jackson County, 349 Mo. 255, 261, 160 S. W. (2d) 691.]

At the conclusion of the evidence in this case, the defendant having failed to make at least a *prima facie* showing of the defense pleaded, plaintiff was entitled, as a matter of law, to recover the loss to which she was entitled under the policy of insurance, and there was no issue of fact to be passed upon by the jury at that time except that of defendant's vexatious refusal to pay the loss. Having

concluded, as heretofore shown, that the issue of vexatious refusal to pay was properly submitted to the jury and that its finding on the issue of damages was supported by evidence, we think that plaintiff was entitled to a judgment according to the terms of the verdict.

We, therefore, conclude that the judgment of the court entered in this case should be reversed and this cause remanded with direction to reinstate the verdict of the jury and to render judgment for the plaintiff in accordance with the terms of said verdict and as of the date thereof. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with direction to reinstate the verdict and to render judgment for plaintiff in accordance with the terms of said verdict as of the date thereof. All concur.