Henry H. NEWKIRK and Margaret J. Newkirk, Respondents,

v.

Frank MOLEY and Marie Moley, Appellants.

No. 23178.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

**214**

James Daleo, Paul Scott Kelly, Jr., Kansas City, for appellants.

Albert Thomson, Harold T. VanDyke, Kansas City, Davis, Thomson, VanDyke, Fairchild & Walsh, Kansas City, of counsel, for respondents.

MAUGHMER, Commissioner.

Plaintiffs had the verdict and judgment in the sum of $4,000 for money had and received. Defendants appeal.

In July, 1952, Henry H. and Margaret J. Newkirk, plaintiffs, began occupancy and use as a restaurant of a storeroom located at 3635 Prospect Avenue, Kansas City, Missouri, and owned by defendants Frank and Marie Moley. A written lease signed only by the Newkirks and covering these premises was received in evidence. No copy of this lease carrying lessors' signatures is in the record. However, Mr. Moley thought that he and his wife had signed, and the parties treated it as having been duly executed. The lease was for five years, from July 15, 1952 to July 14, 1957, with rent of $250 per month; a renewal option for five additional years and provided for an advance payment of $1,000 to be applied as the last four months' rent. The present controversy does not arise out of the provisions of this lease which have been fully performed, but stems from further and additional occurrences between these parties respecting the plaintiffs' occupancy of defendants' premises.

Plaintiffs' restaurant business was apparently successful and expanding. About June, 1956, negotiations were entered into which led to plaintiffs occupying the adjoining building (3637 Prospect) which defendants also owned. It was necessary that this second building be remodeled and renovated before it would meet plaintiffs' requirements for restaurant use. It seems clear that defendants were willing to make improvements but requested plaintiffs to advance all or at least a part of the cost. So plaintiffs gave defendants three checks dated June 11, June 16, and July 2, 1956, each for $1,000 and the owners made at least some of the desired alterations. Thereafter commencing in August, 1956, plaintiffs had the use of both buildings and paid $500 per month rent therefor until September 15, 1958, when they vacated both properties having first given a one month's written notice of their intention to vacate. On Thanksgiving night, 1956, a fire occurred in an adjoining building used as a tavern, which building was likewise owned by the Moleys. Plaintiffs assert that this fire damaged the premises used by them to such an extent that they were unable to use part of the quarters until January 2, 1957. The parties adjusted among themselves the rental figure for this period. Soon after plaintiffs entered upon their expanded occupancy, defendants pre-

pared and presented to them a written lease bearing date of June 6, 1956. It was for five years, covered both properties, with a rental of $500 per month and provided that lessees pay the sum of $4,000 in advance, which was to be applied on the last eight months' rent. Plaintiffs never signed this lease, denied they ever agreed to sign it, and declared there was no understanding as to how long they were to occupy the premises after July 14, 1957, when the first lease expired.

The Newkirks claimed that the Moleys never made proper or satisfactory repair of the restaurant premises after the fire, although the matter was frequently discussed. It seems that when the Newkirks left the premises and turned over the keys, certain restaurant equipment was sold to Mr. Moley. The record contains a list of these items as prepared by plaintiffs. Mr. Moley gave his check dated September 15, 1958, in payment, but later stopped payment. Mr. Newkirk admitted that the parties talked about a second lease, but said the premises were not remodeled to his satisfaction and that he wanted not a five, but a three year lease, to which Mr. Moley never agreed.

On October 12, 1958, after the premises were vacated, the owners moved in, began operation of a restaurant and continued such operation until about June 28, 1959, when the property was destroyed by fire.

The defendant Moley testified that the parties orally agreed upon an additional five year lease, commencing concurrently with the expanded occupancy and increased rental. He also said the $3,000 additional deposit was to be added to the existing $1,000, the whole of which would cover "tail end" rent for eight months. He stated that the reason he and Mrs. Moley started personally operating the restaurant in the vacated premises was "that the Newkirks had a nice business there and hoped we'd have a better chance of re-leasing it than to let the business go away and then try to lease it to someone else in a vacant room that had to start the business from scratch".

Mrs. Newkirk's testimony was substantially in accord with that of her husband. She did state that they spent more money remodeling the additional quarters than the owners did, and that Mr. Moley had asked her if they would "advance or loan" him $3,000 to pay the costs of the improvements and changes he was making. She said the roof leaked after the fire, that the floor was about to fall in, that the defendants failed to repair these defects, and that she thought the place was dangerous.

It should be noted that when plaintiffs occupied the additional space and began paying an increased rental in August, 1956, the original lease covering a part of these premises had eleven more months to run. Plaintiffs had a second count in their petition, but it was finally disposed of in the trial court. Defendants counterclaimed for damages to the premises and for unpaid rent to the end of the alleged second five year term. The unanimous jury verdict was for plaintiffs on their petition for money had and received in the amount of $4,000 and for plaintiffs and against defendants on their counterclaim for unpaid rent and for damages to the building.

Appellants assert the Court erred in refusing to permit the defendant Frank Moley to testify as to whether or not he "made any money" while he occupied the restaurant. The point is without merit. The Court did not err in refusing to admit such testimony.

Appellants' additional assignments are (1) Error in giving plaintiffs' Instruction No. 1; (2) Refusing defendants' Instruction A; and (3) Refusal of defendants' Instruction B. Respondents assert that they were entitled to a directed verdict, but that the Court ruled properly as to these three instructions. Instruction No. 1, directed a finding for plaintiffs in the sum of $4,000 if (1) Plaintiffs deposited $4,000 with defendants as "tail end"

lease money; (2) There was no written lease; (3) Plaintiffs canceled their tenancy and vacated; (4) Defendants accepted the premises and began operating a restaurant thereon; (5) Defendants did not seek another tenant, but intended to operate a restaurant; and (6) The property was destroyed by casualty in June, 1959.

Appellants say generally this instruction is bad because it does not hypothesize sufficient facts to justify a verdict and specifically contend this is so because certain of defendants' defenses were not negated. First, say defendants, the parties orally agreed to enter into a five year lease. Second, the parties did enter into a five year lease. Third, defendants accepted the premises only because plaintiffs had vacated, and Fourth, defendants would not have made the repairs except for the five year lease agreement.

Section 432.010, V.A.M.S. provides: "No action shall be brought * * * to charge any person upon any * * * lease thereof, for a longer time than one year, * * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged. * * *"

In Campbell v. Sheraton Corporation of America et al., 363 Mo. 688, 253 S.W.2d 106, this statute was held to be a rule of evidence affecting the remedy. Section 432.050, V.A.M.S. declares that all leases for a term of years not put in writing and signed by the parties shall in both law and equity have only the force and effect of leases at will. Speaking of this section in Midland Realty Co. v. Manzella, Mo.App., 308 S.W.2d 326, 331, this court said: "The obvious intent of the legislature in this enactment was to require both the lessor and the lessee, or their agents lawfully authorized by writing, to sign the lease".

A parol lease for years and a parol agreement to make a lease for a period of years are each within the Statute of Frauds. The rule is stated this way in 49 Am.Jur., Statute of Frauds, p. 368, par. 6: "While there are intimations to the contrary of the rule in a few scattered decisions, the general rule is that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable. Neither promise is enforceable unless the statute is satisfied. In other words, a parol agreement invalid under the statute is not aided by a further parol agreement to reduce the principal agreement to writing. To allow the enforcement of such an agreement would be tantamount to taking the main contract out of the statute, and as has been said it is absurd to say that an oral promise in relation to certain subject matter is invalid, but that a promise that the party will thereafter bind himself with respect to the subject matter is valid. Such a construction would be a palpable evasion of the statute, and let in all the evils against which it is directed".

In Yacobian v. J. D. Carson Co., Inc., Mo.App., 205 S.W.2d 921, defendant and plaintiff orally agreed upon a three year lease, rent $300 per month, with plaintiff as lessee depositing $3,000 as "tail end" rent. Defendant's attorney prepared a lease in conformity, which plaintiff signed, together with an escrow agreement covering the $3,000 deposit and delivered to defendant. Some difficulties arose as to who would pay the escrow fee and defendant finally called off the whole deal. Plaintiff sued for specific performance and had judgment below. The St. Louis Court of Appeals reversed outright, holding the Statute of Frauds applied.

In this case we find no writing whatever signed by the party to be charged respecting a second five year lease. We think it is clear defendants' contentions that the parties agreed to enter into a five year lease and that they did enter into an

oral lease are both within the scope of the operation of the statute. This being true, it is immaterial whether or not defendants accepted return of possession and occupied the premises themselves. If there was no lease, then plaintiffs were tenants at will, and if they vacated after due notice it makes no difference whether defendants or another tenant occupied, or if the premises stood vacant. On this point therefore it would seem that the instruction gave the defendants more than they were entitled to have.

Respecting defendants' contention that they made improvements during the year and that such were conditioned upon the lease and amounted to performance which would take the agreement out of the Statute of Frauds, we think the correct rule as to contracts is stated in Pemberton v. Ladue Realty & Const. Co., 362 Mo. 768, 244 S.W.2d 62, 64, as follows: "The case now before us is an action at law to recover damages for breach of an oral contract which admittedly could not be performed within one year. Part performance in such a case does not take the contract out of the statute of frauds. In 49 Am.Jur. 395, Sec. 35, the rule is fully stated as follows: 'The fact that a contract is to be or may be partly performed within a year does not take it out of the operation of the statute. The term "performance" means complete performance. Thus, where the defendant agreed to perform certain acts during successive years, the fact that he performed the contract during some of the years does not take it out of the statute so as to render him liable for a breach of the contract on account of his refusal of further performance. * * *'"

In State ex rel. Uthoff v. Russell, Mo. App., 210 S.W.2d 1017, plaintiffs alleged they entered into an oral agreement with defendants, who were constructing apartments, to lease a certain one of them when constructed, for a term of two years, at $88 per month rent; that pursuant thereto they executed a "house lease" and paid defendants $264, being the first month's rent

and two months' "tail end" rent and that defendants refused to execute the lease. Plaintiffs sought specific performance. At page 1021, the Court said: "Hence it is a conceded fact that the action in the circuit court is for the enforcement of an oral lease contract which is within the statute of frauds and unenforceable. And this is true whether the oral agreement was one to make a lease or was itself a lease agreement."

■ The parties negotiated regarding a three or five year lease, but no written agreement was ever signed. In the meantime, the plaintiffs, who already had a lease for one half the premises, raised their advance to defendants from $1,000 to $4,000. Defendants made some improvements and plaintiffs thereafter paid not $250, but $500 per month rent. We do not believe that the making of improvements by a landlord for a tenant in possession or for one coming into possession is such a performance as to take an alleged oral lease for the premises out of the Statute of Frauds. We find no reversible error in the giving of Instruction No. 1.

Instruction A submitted the question of the oral lease and directed that if the jury find there was such an oral lease, the verdict should be for defendants. Instruction B was on the question as to defendants' occupancy of the premises, whether this occupancy was on his own account or just to preserve the premises. Our discussion relative to Instruction No. 1, it seems, disposes of defendants' contentions as to these refused instructions. It was not error to refuse Instructions numbered A and B.

There is a further reason why this judgment should not be reversed. We think a verdict might well have been directed for plaintiffs. The defenses interposed were that the parties orally agreed to enter into a five year lease, and that they did enter into a valid five year oral lease, the Statute of Frauds being surmounted by defendants' performance within one year by making the improvements. The Court heard

and admitted all the evidence on these points and then ruled in effect that the statute applied, by refusing to submit these defenses to the jury. We have approved the action of the Court in so doing. With these proffered defenses, including defendants' claim for unpaid rent, washed away by the statute, the essential elements of plaintiffs' claim and entitlement to a $4,000 judgment stand uncontradicted and admitted, with neither a denial of the payment or even a claim for set-off, standing in the way of its allowance.

This Court in Hunt v. United States Fire Ins. Co. of New York, 239 Mo.App. 625, 193 S.W.2d 778, 788, 789, in holding plaintiff entitled to a directed verdict, said: "This on the principle that when it appears plaintiff has a cause of action and defendant pleads an affirmative defense which it fails to sustain, plaintiff is entitled to judgment. This principle has been announced often. (Citing cases.)"

This proposition was more fully stated in Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691, 693: "It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. (citing cases). There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass. (Citing cases.)"

No other assignments of error have been presented. We believe that under the law and the evidence, the verdict and the judgment were for the right parties. The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.