**Robert McCARTHY and Mary Jane McCarthy, Appellants,**

**v.**

**Arlou WULFF and Ervin Wulff, Respondents.**

**No. 54474.**

Supreme Court of Missouri, Division No. 1.

April 13, 1970.

George R. Gerhard, St. Louis, for appellants.

James A. Cole, L. B. Eckelkamp, Jr., Jenny, Cole & Eckelkamp, Union, for respondents.

DOUGLAS W. GREENE, Special Judge.

This case is a wrongful death action in which plaintiffs seek to recover damages for the death of their eleven-year-old son who was struck and killed by an automobile. At a jury trial, the trial court directed a verdict for defendants at the close of the plaintiffs' evidence on the grounds that plaintiffs had failed to sustain the necessary elements of their petition. Plaintiffs appeal.

The evidence, viewed in a light most favorable to plaintiffs and giving them the benefit of all reasonable inferences arising from the evidence, Brubaker v. Moore, Mo. Sup., 432 S.W.2d 216, was as follows.

Plaintiffs' son, John McCarthy, was eleven years -old at the time of the accident, which occurred on October 29, 1966, at about 8:30 A.M. in St. Charles County, Missouri. John was struck and killed by an automobile traveling east on Highway 40 at or near its intersection with Highway 94. Highway 40 was a dual lane highway with two eastbound and two westbound lanes that were separated by a grass and dirt median. The width of Highway 40 at its intersection with Highway 94 was 21 feet 8 inches. The weather was clear and dry. The intersection of the two highways was clearly visible from a point on Highway 40 that was 1,018 feet west of the intersection. (Plaintiffs' exhibits 3 and 3A.)

The surface of Highway 40 was concrete, and the two eastbound lanes were divided by an alternating black and white line.

Dagsted's General Store and Johnson's Service Station were located north of westbound Highway 40 and on the east side of Highway 94.

Bob O'Connor, a friend of the McCarthy boy, was visiting in the McCarthy home. He was eleven years old at the time of the accident and thirteen years old at the time of trial. He testified that he and John got up early and decided to go to Dagsted's to buy some candy. They borrowed two bicycles from a neighbor for the trip. The McCarthy home was south of eastbound Highway 40. The boys crossed Highway 40, bought the candy at Dagsted's and some soda pop at the service station, and started back south on Highway 94. They crossed the westbound lanes of Highway 40, and Bob stopped on the dirt portion of the median to get some candy out of his pocket. He was within five feet of the north edge of Highway 40 at that time.

Bob O'Connor testified that John continued south on Highway 94 but stopped his bicycle about the center of eastbound Highway 40. John's bicycle was astraddle the center line. While Bob was getting the candy out of his pocket, he heard the squealing of tires, looked up and saw a new navy blue, shiny car that was in the inside or north lane of Highway 40 swerve to the left or north behind the rear end of John's

bicycle. He said that this car did not strike John. He then said, "after that car I didn't—after he passed me I didn't see him at all, and then the car in the right lane hit him and went down the highway a little bit and then I could see him, and John came off the rear of that car and landed in the highway." He identified the right lane as the south lane, or lane next to the shoulder. He was not permitted to identify pictures of defendants' car as looking like the one that struck his friend. He said the car that struck John was a light colored car that could have been blue or green, that he wasn't looking closely at the car, but was watching John. On cross-examination, he said that the car that hit John could have been a 1962 blue Plymouth, Dodge, or Valiant, that he didn't actually see the car strike John, but did see John fly through the air and come down off the left rear fender of the car in the south or shoulder lane. Mr. Robert McCarthy, John's father, on cross-examination said that Bob O'Connor had told a police officer, Sergeant Schmitt, that there were four people in the car that hit John.

Afton Ware, a chemist for the State Highway Patrol Laboratory, examined John's clothing after the accident. He found a fragment of glass in the right sleeve of the sweat shirt John wore. There were no paint smears on the clothing. There was an "ironed" defect, as could be made by a heavy object, around a torn place on the pants.

█ Defendants' attorney, Mr. Cole, made an opening statement. Opening statements usually are not considered as judicial admissions unless they are clear, unequivocal admissions of fact, in which case they are binding on the party in whose interest they are made and may be considered by the jury as admitted facts. Bayer v. American Mutual Casualty Co., Mo.Sup., 359 S.W.2d 748.

In his opening statement defendants' attorney stated that defendants owned a 1962 grayish-green Chevrolet, and that the car was equipped with hydraulic brakes and steering. He stated that defendant Arlou Wulff was taking her husband, defendant Ervin Wulff, to the doctor in St. Louis. Four people were in the car, Mr. and Mrs. Wulff and their two daughters. He stated that Mrs. Wulff was driving east on eastbound Highway 40 in the south or shoulder lane at the time and place of the accident and that the only other automobile on the highway at that location and time was in the north or passing lane.

█ All of these statements were clear, unequivocal assertions of facts that could be considered by the jury along with all other facts and circumstances in evidence in determining the issues.

In addition, portions of the deposition of the defendant Arlou Wulff were read into evidence as admissions against her interest as a part of plaintiffs' case. She said that the car she was driving was a 1962 green Chevrolet Biscayne, and that she was driving through St. Charles County towards St. Louis at a speed of 50–55 miles per hour. She further stated that when she first saw the boy on the bicycle he was on the north-fourth of the left-hand lane and was on the concrete slab; that he was looking east towards St. Louis and never did look back towards her car, and that she saw the boy on the bicycle as soon as she could see that part of the road.

Plaintiffs' exhibits 1 through 21 were offered and received in evidence. Plaintiffs' exhibits 8 through 12 were pictures of defendants' car, taken pursuant to a court order on December 31, 1967. The pictures show a dent in the chrome grill, a pushed-in depression in the flat lower section of the front bumper where the license plate would normally attach, a broken left front headlight, and a broken left front windshield.

Plaintiffs contend, on appeal, that the evidence as stated above made a submissible case on the issue of humanitarian negligence and that the trial court erred

in directing a verdict for defendants at the close of plaintiffs' evidence.

■ The granting of a motion for a directed verdict at the close of plaintiffs' evidence is a drastic action and should be done only when all of the evidence and the reasonable inferences to be drawn therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ. Wehrkamp v. Watkins Motor Lines, Inc., Mo.Sup., 436 S.W.2d 698.

The evidence in plaintiffs' case was circumstantial on the issue of whether or not defendants' automobile struck plaintiffs' son, but that fact alone is certainly no bar to recovery, of and by itself.

■ A plaintiff may rely on circumstantial evidence for the purpose of connecting a defendant motorist with the accident out of which the litigation arose. Gray v. Williams, Mo.App., 289 S.W.2d 463. The circumstantial evidence need not have the quality of absolute certainty. It is enough if it affords, as is the case here, a substantial and sufficient basis for deductive reasoning. Fellows v. Farmer, Mo. App., 379 S.W.2d 842.

■ It was admitted that plaintiffs' son died of injuries he sustained when he was struck by an automobile while he was riding a bicycle. We hold that it was a jury question, under the evidence, as to whether or not defendants' automobile was the one that struck him. See Irgang v. Tieman Coal & Material Co., Mo.App., 46 S.W.2d 919, Koebel v. Tieman Coal & Material Co., 337 Mo. 561, 85 S.W.2d 519, and Brubaker v. Moore, supra, for circumstantial evidence cases where there was no direct evidence that defendant driver had struck plaintiff's vehicle. In those cases the court held that issue to be a jury question.

The only remaining question for our decision is whether or not plaintiffs made a submissible case on the issue of humanitarian negligence. The elements of a humanitarian case were first set out by the Su-

preme Court of Missouri in 1924, Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, and the same elements have recently been reiterated in our case law, Hastings v. Coppage, Mo.Sup. (1967), 411 S.W.2d 232, as well as in our Missouri Approved Instructions, M.A.I. 17.14.

■ Those elements, as applied to the facts here, would be whether or not defendants saw, or by the exercise of the highest degree of care should have seen, the deceased in a position of imminent peril or immediate danger in time thereafter, with the means and appliances at hand and with reasonable safety to the defendants and any and all passengers in their automobile, to have stopped their automobile, slackened its speed, or swerved it, and thereby have avoided striking and killing plaintiffs' son, but that defendants negligently failed to do so.

■ Without belaboring evidentiary facts previously set out, we find a jury could have found from the facts in evidence that defendant Arlou Wulff saw the McCarthy boy on his bicycle in the highway as she approached him at a speed of 50–55 miles per hour; that she saw that he was stopped; that he was looking east away from her, and that his bicycle was headed south, a direction that would take him directly across the lane in which she was driving if he continued his onward course which any reasonable driver exercising the highest degree of care would know. Plaintiffs' son was in a zone of immediate danger when he was stopped at or near the middle of a two-lane highway, with cars rapidly approaching him in both lanes. The distance that defendants' automobile was from plaintiffs' son at the time she first saw him on the highway cannot be determined precisely from the testimony and the exhibits, but it is a fair statement that the jury could have reasonably found that she was at least 1,018 feet west of him when she first saw him. While we cannot judicially note the exact distance it takes a specific automobile to stop when driven at a specific speed on

a dry concrete highway, we can and do judicially note that Mrs. Wulff could have stopped within 350 to 400 feet. Johnson v. Bush, Mo.App., 418 S.W.2d 601, l. c. 608. If she could have stopped, the jury necessarily could have found Mrs. Wulff could have slackened her speed or swerved her automobile and avoided the collision, if they believed the automobile she was driving collided with the boy. Peterson v. Tiona, Mo.Sup., 292 S.W.2d 581, l. c. 583.

It was for the jury to determine when and where the zone of immediate danger began for plaintiffs' eleven-year-old son, who was oblivious to the danger that caused his death. Hendershot v. Minich, Mo.Sup., 297 S.W.2d 403.

Defendants contend that plaintiffs' son was not on a collision course with defendants' automobile and thus was never in a position of imminent peril, citing Hastings v. Coppage, supra. That case is readily distinguishable on its facts, as there a pedestrian was walking parallel to the highway and suddenly turned into the side of defendant's vehicle that was stopping to pick him up.

Hendershot v. Minich, supra, is much more analogous on its facts. In that case the court held that an automobile driver had a duty to act to avoid striking a twelve-year-old boy who was crossing the highway on a bicycle oblivious to the approach of defendant's automobile, when it was, or should have been reasonably apparent to defendant driver that the boy was oblivious to approaching danger, and was intent on moving into the pathway of defendant's oncoming car. See also Murphy v. Land, Mo. Sup., 420 S.W.2d 505, and Graham v. Conner, Mo.App., 412 S.W.2d 193.

We hold that plaintiffs made a submissible humanitarian case against defendant Arlou Wulff. It necessarily follows that a submissible case was also made against her husband, defendant Ervin Wulff, under the doctrine of respondeat superior, as she was taking him to the

doctor, at his direction, when the accident occurred, so that her negligence, if any, is imputable to him. Rose v. Wells, Mo.App., 266 S.W. 1015.

It therefore follows that the trial court erred in sustaining defendants' motion for a directed verdict at the close of plaintiffs' evidence. The judgment of the trial court is reversed and the cause remanded for a new trial.

All of the Judges concur.