Marie BOYLE, Appellant,

v.

COLONIAL LIFE INSURANCE COMPANY OF AMERICA et al., Respondents.

No. KCD 26563.

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1975.

Application to Transfer Denied Sept. 8, 1975.

Donald E. Raymond, Kansas City, for appellant.

Lawrence M. Berkowitz, Kansas City, for respondent Colonial; Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, of counsel.

Don B. Roberson, Kansas City, for respondents Davis; Shugart, Thomson & Kilroy, Kansas City, of counsel.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an action brought by the widow of one Ernest Boyle, in three counts, in each of which she claims the proceeds of certain life insurance policies issued by the respondent Colonial Life Insurance Company of America (hereinafter called "Colonial") insuring the life of the said Ernest Boyle and in which the appellant was named beneficiary. She alleges that such policies were in full force and effect at the time of her husband's death on July 24, 1969.

These counts on the insurance policies were joined with a fourth count wherein the appellant, pleading in the alternative, sought damages in the amount of the insurance policies against the Herb Davis Insurance Agency, Inc. and Herb Davis individually (herein referred to collectively as "Davis"). Basically, this fourth count was bottomed upon allegations of negligence in failing to keep such life insurance in force in accordance with an agreement between Davis and the Boyles.

Colonial filed its answer to the petition, wherein it admitted the issuance of said insurance contracts, but set up as a defense the alleged fact that each of said insurance contracts "was lapsed and forfeited for nonpayment of premiums at the time of the death of Ernest W. Boyle."

Davis filed a joint and separate answer to the petition, admitting that Herb Davis is a "duly licensed insurance agent" of Colonial and the issuance of the insurance contracts, but generally denying the allegations of Count IV of the petition and further alleging that if the policies sued on "were not in force and effect" then Colonial "is estopped to deny their issuance and the coverage" thereunder. Coupled with this answer, Davis filed a cross-claim against Colonial in two counts. This cross-claim asserts that if Davis is held liable to appellant, Davis is entitled to indemnity for such loss and recovery from Colonial because of Colonial's wrongful conduct in several particulars by reason of its handling of such policies and its failure to notify either Davis or the insured of any lapse.

Colonial filed its answer to the Davis cross-claim, in the nature of a general denial. Coupled with this answer, it in turn filed its cross-claim against Davis admitting that at all times mentioned, "Davis and The Agency were the duly authorized agents of Colonial Life". Liability on the insurance contracts was again denied, but if such was found to exist, Colonial asserted it was entitled to indemnification from Davis because in arranging financing of the insurance premiums and in accepting premium payments on the insurance, Davis acted outside the scope and contrary to his authority as agent of Colonial and negligently failed to pay the premiums due on said policies in September, 1968.

The Davis reply to Colonial's cross-claim was in the nature of a general denial.

The appellant filed a reply to Colonial's answer, in which she set forth the whole legal and factual theory of her action on the policies. These allegations need not be set out in detail but may be thus summarized: *first*, by reason of Colonial's lapsing the policies prior to its insured's death for alleged failure to pay the premiums due for

the period from September, 1967 to September, 1968 (which premiums had in fact been paid), the insured was relieved and excused from any obligation to pay further premiums, and since Colonial had asserted the same reason for its denial of the death claims, it is estopped to refuse payment for the asserted failure to pay any subsequent premiums; *second*, that the original wrongful lapse of the policies by Colonial caused appellant to expend time and attorneys' fees to prove that the action of lapsing the policies was wrongful and Colonial is estopped to assert any other or different defenses to appellant's claims; *third*, that Davis was clothed with the actual and apparent authority as agent for Colonial to make arrangements for the financing of the premiums with the insured, to accept premium payments on behalf of Colonial, and that it was the custom and practice of Colonial to give its soliciting agent and its insured notices of premiums due and lapse notices, which it had failed to do, and is thus estopped and precluded by such failure; *fourth*, that the premiums due for the period of September, 1968 to September, 1969, had in fact been paid to Colonial by the execution of the financing papers (invoice contract) in July, 1968; *fifth*, that the premiums for the period from September, 1969 to September, 1970, had been paid to Colonial, acting through its agent Davis, and Colonial is therefore estopped to assert nonliability because of nonpayment of premiums due prior to September, 1969.

With the issues thus drawn, the cause proceeded to trial, and at the conclusion of appellant's evidence the trial court sustained motions for directed verdicts as to both Colonial and Davis. The trial court, so far as the record shows, stated no reasons for this action. After an unavailing motion for a new trial, appellant perfected this appeal.

■ The action of the trial court in granting the motions for directed verdicts at the close of the plaintiff's evidence is a drastic one and "should be done only when *all* of the evidence and the reasonable infer-

ences to be drawn therefrom are so strongly against plaintiff that there is no room for reasonable minds to differ." *McCarthy v. Wulff*, 452 S.W.2d 164, 168[3] (Mo.1970); *Smith v. Prudential Insurance Company of America*, 300 S.W.2d 435, 440[3] (Mo.1957); *Baumle v. Smith*, 420 S.W.2d 341, 344[3] (Mo.1967); *Wehrkamp v. Watkins Motor Lines, Inc.*, 436 S.W.2d 698, 700[1] (Mo. 1969).

■ Another principle of law firmly implanted in this state is, that in a suit to collect the proceeds of a life insurance contract, the plaintiff makes a prima facie case by proving the issuance of the policy by defendant, payment of one premium, beneficiary designation, death of insured, demand for payment, and refusal thereof. *Connor v. United Insurance Co.*, 313 S.W.2d 222, 224[5] (Mo.App.1958); *Saunders v. Crusader Life Insurance Company*, 421 S.W.2d 563, 567[5] (Mo.App.1967).

■ Equally well defined in law is the fact that affirmative defenses to suits upon insurance contracts, including the defense of lapse and forfeiture for nonpayment of premiums, as is asserted in the case at bar, must be pleaded, *Connor v. United Insurance Company*, 313 S.W.2d 222, 225[6] (Mo. App.1958), and the burden of proof on such issue is on the defendant, *Stout v. Independent Order of Foresters*, 115 S.W.2d 32, 35[3] (Mo.App.1938); *Clair v. American Bankers Ins. Co.*, 137 S.W.2d 969, 973[7] (Mo.App.1940); *Saunders v. Crusader Life Insurance Company, supra*, and such burden remains with the defendant throughout the case, *Gennari v. Prudential Insurance Company of America*, 335 S.W.2d 55, 60[2] (Mo. 1960).

■ Once the plaintiff has established his prima facie case, it is the ancient and general rule that his case cannot be taken from the the jury "for he has the right to have the jury pass on the credibility of the defendant's witnesses and the weight of their testimony", *Peterson v. Chicago & A. Ry. Co.*, 265 Mo. 462, 178 S.W. 182, 187–188[3] (1915); *Smith v. Prudential Insurance Com-*

*pany of America,* 300 S.W.2d 435, 440[3] (Mo.1957). In *Smith,* the court notes an exception to this general rule and states it in these terms (l.c. 440):

" * * * When the proof is documentary, or the defendant relies on the plaintiff's own evidential showing (or evidence which the plaintiff admits to be true), and the reasonable inferences therefrom *all point one way,* there is no issue of fact to be submitted to the jury. * * * " (Emphasis supplied)

In the case of *Thrower v. Life and Casualty Ins. Co. of Tennessee,* 141 S.W.2d 192 (Mo.App.1940), the court declared, l.c. 195[4, 5]:

"The burden of proving the affirmative defense pleaded by defendant was upon defendant. * * * It is the established rule in this State that, where plaintiff has made out a prima facie case, it is beyond the power of the trial court to direct a verdict in favor of defendant where defendant has the burden of establishing an affirmative defense, *unless such defense is conclusively established by evidence which is conceded by plaintiff to be true, or is established by documentary evidence which is of such a character as to be binding upon plaintiff and thereby to estop him from denying it.*" (Emphasis supplied)

■ In reviewing the action of a trial court in ruling on defendant's motion for a directed verdict (whether ruled at the close of plaintiff's evidence or at the close of all the evidence, and whether sustained or overruled) the reviewing court must determine whether plaintiff made a submissible case, and in so doing, the plaintiff is entitled to the most favorable view of all the evidence and must be given the benefit of all favorable inferences to be drawn therefrom. *Duke v. Missouri Pacific Railroad Company,* 303 S.W.2d 613, 616[1] (Mo.1957); *Willis v. Wabash Railroad Company,* 377 S.W.2d 489, 492[1] (Mo.App.1964); *Hale v. Kansas City Southern Railway Co.,* 363 S.W.2d 542, 543[1] (Mo.1963); *Grissom v.*

*Handley,* 410 S.W.2d 681, 684–685[2] (Mo. App.1966).

■ An important corollary of this principle is that where a trial court has directed a verdict for the defendant at the close of plaintiff's evidence, the "plaintiff may urge any and all possible theories of liability, and, of course, if any one of them is valid the court erred in not submitting the case to the jury." *Arbogast v. Terminal Railroad Association of St. Louis,* 452 S.W.2d 81, 83[1] (Mo.1970).

It is under the searchlight of these guiding principles and within the restrictions that they impose, that the evidence in the trial court must be reviewed and tested.

There can be no doubt that the appellant made a prima facie case against Colonial. The three policies of life insurance sued on were offered and received in evidence as part of appellant's case. They show that they were all issued on September 1, 1967, based upon applications dated August 30, 1967, secured by Davis as agent for Colonial, and that the appellant was named as sole beneficiary. The fact that the insured died July 24, 1969 is not disputed nor the further fact that through Davis proper proof of death and claims thereon were submitted to Colonial and payment thereon refused under date of August 7, 1969 (P. Exh. No. 7) for the stated reason:

"Policies numbered 421696 and 421698 lapsed without value for non-payment of the premium due October 1, 1967. Policy number 421697 lapsed without value for non-payment of the premium due December 1, 1967."

Since Colonial's answer did not specify which premiums were not paid and resulted in the lapse and forfeiture by the appellant, in order to meet the burden placed upon her to make a prima facie case, appellant testified as to her initial dealings with Davis. She stated that she and her husband met with Davis in August, 1967, with reference to fire insurance on a building owned by them and from which her husband operated a TV and appliance business. In the course

of the preliminary dealings with Davis, it was agreed that he, Davis, would handle all of the Boyles' insurance in connection with Boyle's business, the residences owned by the Boyles, and various motor vehicles. It was also decided that Ernest Boyle would apply for the three life insurance contracts to protect the mortgages outstanding on three properties. Mrs. Boyle testified that she handled all of this kind of business detail for both herself and her husband. She had expressed her desire to Davis that the premiums on all of the policies under his stewardship be set up so that she could make one monthly payment rather than numerous payments throughout the policy periods, and that she would not receive premium notices. Davis stated that he "could arrange financing" and this was initially done by the appellant, giving Davis a check dated August 26, 1967 in the amount of $209.30 as a down payment to cover a month's finance payment on the various commercial policies and life insurance.

When the life insurance policies were received, two of them were set up on a monthly premium and one on a quarterly premium basis. Shortly thereafter, appellant began receiving premium notices on the life insurance, and she asked Davis the reason, since she understood that the financing was to be for all premiums and called for one monthly payment. Davis advised her that he would "take care of it" but that new forms would have to be signed. Accordingly, a new document was executed by Ernest Boyle on October 17, 1967, which was denominated "Invoice Contract" and which included annual premiums on the three Colonial Life insurance policies. On the same day this document was assigned by Davis to the City National Bank and Trust Company, and he received the proceeds therefrom. Thereafter, the Boyles received a monthly payment book from the bank and appellant made such payments to the bank totalling $1,146.73, and the "Invoice Contract" was marked "Paid" by the bank on July 12, 1968 and returned to the Boyles.

However, the appellant testified that in November or December, 1967, she began to get "lapse" notices from Colonial. Upon inquiry of Davis, he advised the appellant that the company (Colonial) probably had not gotten the papers "all straightened up yet" and that she should "Disregard it. It's all right, Marie; don't worry." Upon receiving such notices again in the first part of 1968, and again making inquiry of Davis, he told appellant that "They're still fouled up. Don't worry about it, Marie, I have taken care of it." He stated that he had "sent his check in" and had cancelled checks to show payment from the funds the Boyles had provided from the banking arrangement.

There is a complete absence of evidence, documentary or otherwise, that Davis did not receive the proceeds of the "Invoice Contract" from the bank to cover the annual premiums on the life insurance and other policies therein involved. The life insurance premiums were to cover the annual premiums from September 1, 1967 to September 1, 1968. Each of these policies contains the provision:

> "PAYMENT OF PREMIUMS.—All premiums are payable either at the company's home office or at any of its branch offices *or to an agent of the company* * * * " (Emphasis supplied)

 Thus, it is apparent that Davis had specific authority to accept premium payments on behalf of Colonial. The appellant therefore met the burden placed upon her to establish the payment of the first premium. She, therefore, made a prima facie case against Colonial, as defined in *Connor v. United Insurance Co., supra,* and *Saunders v. Crusader Life Insurance Company, supra,* and the burden was upon Colonial to prove the claimed lapse and forfeiture for nonpayment of premiums under *Stout v. Independent Order of Foresters, supra; Clair v. American Bankers Insurance Co., supra,* and *Gennari v. Prudential Insurance Company of America, supra.*

But Colonial strongly argues that the presumption that the policies were in force was not relied upon by appellant since she undertook to prove that the premiums due for the period of September 1, 1968 to September 1, 1969, had, in fact, been paid. Considering all the evidence and reasonable inferences to be drawn therefrom, this position cannot be accepted.

As above noted, the appellant in her alternative pleading of her cause of action in Count IV against Davis, basically takes the position that she and her husband had an agreement with Davis to handle all of the insurance involved and to arrange financing so that she could make one monthly payment and be relieved of all other details. She "checked the entire thing to Davis". It was her understanding that he was to keep the policies here involved in force by this means. She testified that Davis initiated the financing arrangements for the years 1968 and 1969, and it was her understanding that such were to be the same as the 1967 arrangements.

She stated that in July, 1968, at Davis' request, she signed a new financing form, "Invoice Contract", in blank. She assumed that the Colonial policies were included, although there was no specific discussion of them at that time. She was fortified in this belief by reason of the fact that she never received any premium or lapse notices on the Colonial policies after September 1, 1968, and learned nothing of the position of the company that the same had lapsed until after her husband's death in the communication of August 7, 1969, when her claims on the policies were denied. In this connection, it is of importance to again note that the basis for such declination was the failure to pay premiums due in *1967*, which counsel for Colonial admitted in his opening statement had in fact been paid. Of further significance in this regard was the deposition testimony of Louis La Salle, Assistant Vice President in charge of Policy Accounting for Colonial, wherein he stated that the procedure of Colonial with reference to premiums was that first the regular premium notices are mailed to the insured. Twenty-one days after such premium is due, a reminder notice is mailed to the insured. Thirty-one days after the due date, a lapse notice is mailed to the insured, with a copy to the resident office. Between sixty and ninety days a form No. 362 and notification of lapse is sent to the resident office. Ninety days after the premium is due, a reinstatement form No. 250 RL is sent to the insured. These are the ordinary conservation procedures and the general policy of the company with reference to all policies as routine, and the three policies here involved would ordinarily be subject to the same conservation procedure. Appellant testified that the Boyles did not receive any of these communications.

Davis collected the down payment on the premiums for September, 1968 to September, 1969, in the amount of $214.60; on July 27, 1968, she received a payment book from the bank and had no knowledge that the Colonial policies had not been included on the "Invoice Contract" until she received the document marked "Paid" from the bank.

Davis assured her that these Colonial premiums had been paid, and of further significance as to the alternate cause of action against Davis is the statement in the letter dated August 19, 1969, from Colonial to counsel for appellant, that the records of the company showed that the policies had lapsed as of September, 1968 because the 1968 premium had not been received, and further stating:

"Mr. Davis, the broker under these policies, wrote to us in August indicating that the premiums were financed for the year 1967 and 1968. There was no question that our insured paid the annual premium due in 1967, but Colonial Life never received payment due in 1968. We were informed that our insured had taken a loan to pay these premiums, and while we have not received the moneys, we have asked Mr. Davis to forward us a copy of the loan agreement or the check

payable to Colonial. We requested this information yesterday and to date have not heard from Mr. Davis. On the basis of our records we have no alternative but to deny payment at this time. * * * "

It should be further noted that at the time the above letter was written, Davis had made premium financing arrangements with the Boyles on July 17 and 18, 1969 for the financing of the premiums, including the three Colonial policies, for the year September 1, 1969 to September 1, 1970, and the appellant had made a payment thereon to the Commerce Trust Company at Kansas City.

■ The appellant stated that in the light of her transactions with Davis, and his assurances to her that the September, 1968 premiums had been paid, she "assumed" that such was the case. It is clear that this evidence was directed to Davis in support of appellant's alternate cause of action against him. It was proof that Davis either violated his agreement with the Boyles to keep the three Colonial policies in force by the financing arrangements by not including them, or that he did in fact receive the 1968 premiums from a financing source, or paid them by other means, such as adjustment of his agent's accounts with Colonial. It was entirely outside either appellant's competency or obligation to establish any of these latter facts, and she did not attempt to do so and thus assume the burden sought to be imposed upon her by Colonial and lose the benefit of the presumption which arose as to her cause of action against Colonial. The case of *LePage v. Metropolitan Life Insurance Company,* 314 S.W.2d 735 (Mo.1958), relied upon by Colonial, is not persuasive toward any other conclusion.

■ Another factor worthy of note is that the pleaded defense that Davis acted outside the scope of his authority is not shown by the record. He was admittedly an agent of Colonial who took the applications for the life insurance on Colonial forms, he was specifically clothed with the authority to receive premium payments un-

der the terms of the policies, and nothing appears that he lacked at least apparent authority to arrange financing of premiums, change the periods when the premiums would be due, transmit at least the net premiums to the company, or do any other acts necessary to maintain the policies in force, including extension of credit. In the absence of fraud on the part of the agent and the insured, the company was bound by his acts, contracts or representations which are within his real or apparent authority. When limitations upon such authority "are unknown to the other contracting party, 'apparent authority is equal to real authority' ". *Baker v. St. Paul Fire and Marine Insurance Company,* 427 S.W.2d 281, 285–286[2, 3] (Mo.App.1968); *Chailland v. MFA Mutual Insurance Company,* 375 S.W.2d 78, 82[7] (Mo. banc 1964); *Travelers Indemnity Company v. Beaty and Missouri State Highway Commission,* 523 S.W.2d 534 (Mo.App. 1975).

■ The able briefs of counsel suggest other complicated areas of fact and law which cannot be determined and need not be discussed here, and thus extend the already burdensome length of this opinion. The conclusion reached is that the court erred in sustaining the defendants' motions for directed verdicts at the close of appellant's evidence; that she made a submissible case against Colonial on Counts I, II and III, and against Davis on her alternative cause of action in Count IV; and that justice can be done to the parties only by a full exposition of the relevant testimony, documents and records, and a determination of the fact issues by a jury under applicable legal principles.

Accordingly, the judgment herein is reversed and the cause remanded for a new trial.

All concur.