**David T. JORDAN,
Appellant-Respondent,**

v.

**ROBERT HALF PERSONNEL AGENCIES OF KANSAS CITY, INC. and Donald Apple, Respondents-Appellants.**

**No. WD 31215.**

Missouri Court of Appeals,
Western District.

March 30, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1981.

Application to Transfer Denied
June 8, 1981.

William C. Partin, Matthew K. Partin, Kansas City, for appellant-respondent.

William H. Sanders, Shirley Ward Keeler, Kansas City, for respondents-appellants.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

David T. Jordan recovered a jury verdict against Robert Half Personnel Agencies of Kansas City, Inc. and Donald Apple on claims for tortious interference with an employment contract and for breach of a fiduciary duty. The parties each have appealed with the consequence that normal designations of appellant and respondent are not appropriately descriptive for purposes of this opinion. Proper names will therefore be used with indication of the source for claim of the error contended to require appellate correction.

Jury trial of this case generated some six hundred pages of transcript and more than forty documentary exhibits. The gist of Jordan's claim, however, was that the Half Agency through its agent and employee, Apple, had disclosed to Jordan's employer that Jordan was seeking other employment and had thus precipitated Jordan's discharge. Some few details adding structure to this outline are necessary as a preliminary to discussion of the points raised on appeal.

Jordan, a certified public accountant aged 62 at the date of trial, entered the employment of Troupe, Kehoe, Whiteaker and Kent, an accounting firm, as a salaried employee in 1966. While still in their employment and presumably secure in his position, he registered for job placement with the Half Agency, hoping to better his compensation and future prospects.

The Half Agency with national affiliation specializes in accounting, banking and data processing employment opportunities and advertises with the objective of bringing together employer and employee for a negotiated service fee. The Kansas City branch office, defendant below, is locally owned and independently operated under a franchise agreement from R–H Franchises, Inc., a New York corporation. Donald Apple was, at material times, an employment counselor in the service of the Half Agency.

Jordan registered with the Half Agency in 1970. Anticipated job opportunities, however, did not materialize and there was no contact between Jordan and the agency between 1970 and 1975 except for a telephone conversation between Jordan and Apple when Jordan called to inquire about a newspaper advertisement which aroused his interest.

On August 21, 1975, William Troupe, senior partner in the accounting firm, informed Jordan that his services were being terminated based on "his negative attitude, refusal to accept responsibility and poor retentive powers." No mention was made of Jordan's listing at the Half Agency and no direct information thereafter reached Jordan relating his discharge to this cause. After leaving the Troupe firm, Jordan sought regular full-time employment but he obtained only temporary assignments and derived income from that source and from personal business at a significantly lower amount in total than had been his salary at the Troupe firm.

Evidence to this point was undisputed. In sharp disagreement, however, were the parties' assertions concerning communications between Apple and Troupe and the true reason for the decision to discharge Jordan. While Apple resolutely denied having revealed to Troupe the confidential in-

formation about Jordan's employment registration, Troupe had stated in an early deposition that he had, in fact, been told by Apple that Jordan was a job applicant registered with the Half Agency. When Troupe was called by Jordan as a witness at trial, Troupe acknowledged that he knew of Jordan's registration with the Half Agency but he was unable to recall the source of the information. Throughout, Troupe denied that Jordan's apparent but unproductive efforts to obtain other employment had caused or influenced a decision to terminate his services.

Other evidence on the critical fact issues relating Jordan's discharge to a breach of confidence by Apple and the Half Agency came from Jordan and from witness Keech, a fellow Troupe employee. Keech testified over objection that he had heard comment, after Jordan was dismissed, that Troupe was aware of Jordan's registration with the Half Agency dating back for some time. Jordan testified, also over objection, that he had been told by one David Mitchell, another Troupe employee, of conversations among other employees who discussed as a generally acknowledged circumstance Troupe's prior knowledge of Jordan's registration with the employment agency.

Jordan's petition sought damages from the Half Agency and from Apple and named, as a third defendant, R–H Franchises on the stated theory that the Half Agency was apparently, if not actually, the agent and servant of R–H Franchises. As a consequence, Jordan claimed that R–H Franchises was answerable in damages for the acts of Apple. At the close of Jordan's evidence, the court sustained the motion of R–H Franchises to dismiss on the ground that Jordan had made no case for liability of the franchisor.

The petition on which the case was tried sought actual damages of $100,000 and punitive damages in a like amount. The punitive damage claim was not submitted and the case went to the jury on the prayer for actual damages only. The verdict returned in favor of Jordan and against both Apple and the Half Agency was for $150,000.

Jordan had not earlier moved to amend his prayer and did not do so before entry of judgment. On the date the verdict was returned, the trial court did not enter judgment but on the following day, without notice to the parties, reduced the verdict sua sponte for the stated purpose of conforming it to the prayer of the petition and entered judgment for $100,000. Thereafter, Jordan unsuccessfully moved to amend his petition and for judgment in accordance with the sum awarded by the jury.

As will hereafter appear, disposition of this appeal on grounds requiring reversal of the judgment and the award of a new trial remove from necessary consideration points of asserted error unlikely to recur. Such points will not be restated. Where appropriate, however, issues posing the potential for repetition of errors on retrial are noted.

I—The Involuntary Remittitur

Jordan complains that the action of the trial court in reducing the jury verdict from $150,000 to $100,000 without affording him the opportunity to elect between remittitur or a new trial is without procedural sanction or precedent. He also urges that proper evaluation of the evidence leads to the conclusion that the petition prayer was, upon receipt without objection of evidence placing damages at $174,212, thereby amended without more, and that he is entitled to reinstatement of the jury verdict and a judgment thereon.

The contention is not made here that the amount of the jury verdict was excessive because the product of bias, passion or prejudice and we therefore need not consider the scope of trial court authority when an excessive verdict is challenged on these grounds. Suffice it to say that remittitur is not available to cure an excessive verdict resulting from bias or prejudice. *Woodford v. Illinois Central Gulf Railroad Co.*, 518 S.W.2d 712 (Mo.App.1974).

In asserting that the error in entering judgment should be remedied by direction for re-entry of judgment in accordance with the jury verdict, Jordan argues that his petition should be construed as amended to

conform to the actual proof of damages which at least equalled the verdict. This contention requires that the evidence be examined to determine what damages were arguably proved and whether Apple and the Half Agency were thereby alerted to the prospect that the limit of the petition claim as originally stated was to be exceeded.

Actual evidence on the subject of damages was confined to documents which established what Jordan had earned while employed by Troupe and his self-employment income thereafter. This data was, of course, readily ascertainable and the amounts were not disputed. The additional factors in the damage computation, the salary Jordan would have been paid had he remained with the Troupe firm and the amounts he may earn in the future from his own endeavors, could only be projected as assumptions.[1]

In jury argument, Jordan's counsel used a blackboard to calculate damages. Using actual earnings of Jordan from 1975 as compared to the salary expected from continued employment at the Troupe office, he computed lost earnings to the date of trial at $40,020. Additional lost earnings to 1982 when Jordan reached normal retirement age of 65 amounted to $47,302. Counsel made no further computation but observed that it was uncertain when Jordan would retire and that persons are not compelled to retire at 65 but may work to age 70. Jordan now contends that his proof justified and the jury must have considered lost income by reason of assumed retirement at age 70 rather than at age 65, an increment which increases the proof of damages by additional projection to a total of $174,212, thus supporting a verdict of $150,000.

■ Amendment of the pleading to alter the prayer for damages or to accomplish other changes after trial has commenced is a matter within the discretion of the trial court and the ruling will not be overturned unless the discretion is clearly abused. *Yamnitz v. Polytech, Inc.*, 586 S.W.2d 76 (Mo.App.1979); *Conchola v. Kraft*, 575 S.W.2d 792 (Mo.App.1978). Liberality is to be extended in permitting amendment of pleadings, but account must also be taken of the notice which pleadings furnish to the adversary and the effect which pleadings have on the conduct of the adversary's case. *Harris v. Associated Dry Goods Corp.*, 612 S.W.2d 389, handed down by the Missouri Court of Appeals, Eastern District, 1981.

■ Jordan's counsel presented no documentary evidence nor did any witness testify to a claim for damages beyond the petition amount of $100,000. In argument, counsel made no claim for a greater sum, provided no calculation which would even infer an increase in the amount asked and now relies on a reconstruction of data projections to speculate on how a verdict could have been reached in the amount the jury returned. Whether this theory was in fact the basis for the jury award is irrelevant.

The evidence as to damages coupled with the summation in closing argument indicate no upward revision of the damage prayer. A contention that opposing counsel acquiesced in an augmented claim is groundless because there was neither proof nor argument of excess damages to which objection could have been made. Indeed, the jury argument made by Jordan's attorney as to damages more reasonably leads to the conclusion that the actual award expected was substantially below the petition prayer. On this record, the trial court did not abuse its discretion in denying amendment of Jordan's petition after verdict either on the content of the evidence or on a theory of implied waiver.

---

1. Jordan's proof of damages relied on actual data showing his salary from Troupe between 1966 and 1975 and his self-employment income from 1975 to the date of trial. To project the claim beyond demonstrable figures from the exhibits, Jordan relied on various assumptions including his continued future employment by Troupe throughout, a progression of salary increases and minimal improvement in self-employment earnings. These assumptions are disputed by Apple and the Half Agency. It is unnecessary to disposition of this case that the substantive value of the proof of damages be evaluated and no opinion is here expressed as to this aspect of the controversy.

Having concluded that the jury verdict exceeded the amount supported by the evidence and claimed in the petition and that the excess was not attributable to passion or prejudice, the necessity for remedial action by the trial court through remittitur or a new trial is apparent. Equally apparent is the failure of the trial court to observe the procedures which the doctrine of remittitur comprehends.

A verdict which is not supported in amount by substantial evidence, but which is faulted only because it exceeds the maximum amount the evidence does authorize, is assumed to have resulted from some mistake which may be rectified by remittitur. *Counts v. Thompson*, 359 Mo. 485, 222 S.W.2d 487, 495 (1949). In entering judgment after remission of an excess verdict, the court is not considered to have invaded the province of the jury, but only to have corrected the error of the jury by approving the maximum award which the evidence permits. When confronted with an excessive verdict otherwise susceptible of correction by remittitur, the trial court has no independent authority to reduce the verdict, but must afford the prevailing party the opportunity of remitting the excess and accepting judgment in the lesser amount or having a new trial. *Hunt v. United States Fire Insurance Co. of New York*, 239 Mo. App. 625, 193 S.W.2d 778 (1946); *Cazzell v. Schofield*, 319 Mo. 1169, 8 S.W.2d 580 (1928).

In this case, the trial court acted sua sponte and the judgment is therefore not aided by the remittitur doctrine. While the court does have the authority to correct or amend a verdict after discharge of the jury, the power is limited to matters of form and does not extend to matters of substance. *Comegys v. Chrysler Credit Corp.*, 577 S.W.2d 873 (Mo.App.1979); *Stafford v. Far-Go Van Lines, Inc.*, 485 S.W.2d 481 (Mo.App.1972). If the trial court interposes its assessment of damages for that made by the jury, the judgment so entered is without authority and is void. *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688 (Mo.App.1977). The trial judge cannot substitute his verdict for that of the jury.

*Allison v. Mountjoy*, 383 S.W.2d 314 (Mo. App.1964).

An excessive verdict, as here, could yet be corrected by remittitur if the prevailing party were to accept remittitur and if the trial were found to have been otherwise fair and free of reversible error claimed and preserved. *Clark v. Atchison & Eastern Bridge Co.*, 330 Mo. 721, 62 S.W.2d 1079, 1083 (1933), *cert. denied*, 290 U.S. 701, 54 S.Ct. 229, 78 L.Ed. 603 (1933). This option is not available in the present case, first, because other error in the case requires reversal and, second, because Jordan did not contend before the trial court and he does not here offer to correct the excess verdict by remittitur. Jordan's option for remittitur is additionally precluded by his claim, hereafter sustained, that he was entitled to submission of his case as to the defendant R–H Franchises, Inc. For all of these reasons, it must be held that the judgment entered by the trial court was void because not in conformity with the verdict and a new trial is required.

## II—The Dismissal Of Co-Defendant R–H Franchises, Inc.

Jordan's petition advanced a cause of action against R–H Franchises on the ground of an agency relationship with the Kansas City Half office rendering R–H liable for acts of Half Agency employees. After Jordan's evidence was completed, the trial court sustained a motion by R–H for dismissal on the ground "that there was no evidence of agency in the particular claim of the plaintiff in this case * * *." Jordan asserts that dismissal of R–H was error and he seeks remand as to R–H for trial on the issue of agency alone. R–H argues that the dismissal was in accord with the evidence presented and further contends that Jordan was not prejudiced. For the reasons which follow, we conclude that the dismissal of R–H was error but that R–H Franchises is entitled to retrial on all issues.

The facts adduced by Jordan's evidence may be briefly summarized. R–H Franchises is a corporate vehicle used to market

rights and a service to local businessmen who operate employment agency offices under the Robert Half name. In exchange for an initial franchise fee, a royalty of 6% of gross receipts and a contribution to a national advertising budget, the individual office operator receives rights to use of the name, a manual for operation and suggested methods and procedures and the benefit of cooperative referrals and national and international advertising. The franchisee receives an exclusive territory of operation for a term, in this case 20 years. R–H Franchises is entitled to exercise control over office location and layout, office equipment and printed material and may require monthly reports and inspect local office records at reasonable times. Literature obtainable from and distributed by the local Kansas City office and the national advertising contain no indication that any Robert Half agency is independently owned and operated. A significant value in the franchise is both the apparent and real association among Robert Half offices providing national and international employment placement contacts.

Jordan contended below and he reasserts here that R–H Franchises was the master of the Half Agency in Kansas City because it had the right to control activities of the local office, despite independent ownership, and because the agency was represented to the public as a segment of an integrated national and international business operated by Robert Half. The issue therefore presented on the motion of R–H Franchises for dismissal was whether Jordan's evidence at least made a jury question as to the derivative status of Apple as the agent of R–H Franchises.

■■■ The agency relationship is established when the credible facts, taken as a whole, disclose that a party is acting for or is representing another by the latter's authority. *Smoot v. Marks*, 564 S.W.2d 231, 236 (Mo.App.1978). Agency may be implied or inferred and may be circumstantially proved by conduct of the purported agent exhibiting pretense of authority with knowledge of the alleged principal coupled with acquiescence. *Dudley v. Dumont*, 526 S.W.2d 839, 844 (Mo.App.1975). Generally, the relationship of principal and agent is a question of fact to be determined by the jury. *Smoot v. Marks, supra*. A motion for directed verdict should be granted only when all the evidence and inferences are so strongly against the claimant-plaintiff that there is no room for reasonable minds to differ. *Boyle v. Colonial Life Insurance Co. of America*, 525 S.W.2d 811 (Mo.App.1975).

A case involving similar concepts was *Wood v. Holiday Inns, Inc.*, 508 F.2d 167 (5th Cir. 1975). There, the issue of the agency relationship was on the theory of apparent authority arising from acts and appearances which led others to believe that such a relationship had been created. There, as here, the franchise agreement required the use of service marks and decor intended to convey to the public the impression that the local facility was a unit in a national system owned by the parent company. Also, as here, the manifestations served to convince the public in general and the complainant in particular that employees were in the service of the parent company because there was virtually no way third parties could know the independent nature of the franchisee's business entity. These questions of apparent authority are questions of fact and are therefore for the jury to determine. *Wood v. Holiday Inns, Inc., supra* at 176. *See also Northern v. McGraw-Edison Co.*, 542 F.2d 1336 (8th Cir. 1976), *cert. denied*, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977).

■■■ Without expressing opinion as to the issues of fact on which the decision will turn, we conclude that Jordan adduced substantial evidence that R–H Franchises was entitled to exercise influence and control over significant aspects of the Kansas City Half Agency activities and that arrangements for local Half offices contemplated a representation tending to show the offices as elements of an integrated national business. There was an adequate showing sufficient to require submission of the agency issue to the jury and the trial court erred in directing a verdict.

Contentions that dismissal of the case as to R–H Franchises did not prejudice Jordan and Jordan's assertion that retrial against R–H Franchises should be limited to the agency question are without merit and are rejected.

R–H argues that an additional principal who could be found liable for acts of the agency employees is merely cumulative, that Jordan recovered a substantial verdict without the added defendant and that Jordan suffered no prejudice. Cited in support of this contention is *Cato v. Modglin*, 545 S.W.2d 307 (Mo.App.1976), a chain reaction car collision case. At trial, the court in *Cato* directed verdicts as to two of four defendants and the jury found in favor of the remaining two. On appeal, the court found that judgment as to one defendant had been directed in error and reversed as to only that defendant. Plaintiffs argued that the erroneous direction of verdict had prejudiced their case as to the other defendants and that a new trial should be ordered as to all defendants. The court disagreed concluding that the erroneous verdict direction could not have prejudiced and may have aided plaintiffs' case.

*Cato* is not persuasive here, first because Jordan seeks no relief except reversal as to defendant R–H on the ground of erroneous verdict direction and, second, because the interrelation of liabilities precludes exoneration of R–H if Jordan prevails on the agency theory. While argument could be made, absent other trial error, that retrial should only be as to R–H Franchises leaving the verdict stand as to Apple and the Half Agency, the reverse is palpably unsound. Erroneous dismissal of a party from which the plaintiff could conceivably have recovered is of necessity prejudicial and entitles the complainant to a new trial.

Jordan does, in a somewhat different context, advance the argument that retrial should be limited, not only to the defendant R–H Franchises, but also to the fact issue of agency. It is unnecessary to consider this contention because errors considered in this opinion require reversal and remand for a new trial on all issues and as to all parties.

III—The Admission Of Improper Evidence

Apple and the Half Agency contend they were prejudiced by erroneous rulings of the court on objections to Jordan's evidence. Three subjects of this complaint are testimony of John Keech reporting a conversation of William Troupe, testimony of Jordan stating what he had been told by Troupe employee Mitchell, and the use of Troupe's deposition testimony. This subject more readily divides and will be considered in two segments—the hearsay objection and the Troupe deposition.

It is first significant to note that Jordan's case depended in critical measure on proof that Troupe had learned from the Half Agency of Jordan's employment registration and that this information caused or substantially contributed to cause Jordan's discharge. John Keech, called as Jordan's witness, was permitted to testify over objection that Troupe had told Keech sometime after Jordan's discharge that Troupe was aware Jordan had sought employment through the Half Agency. Apple and the Half Agency contend that the evidence was hearsay and their objection should have been sustained. Jordan argues that although hearsay, the statement was admissible because offered merely to show Troupe's state of mind and not to prove the fact asserted, i. e., Jordan's registration with the employment agency.

The basis for the so-called hearsay rule is that utterances offered to establish the truth of some fact should be subjected to the test of cross-examination whereby the credit of the assertor may be weighed; but if the assertion is made without reference to the truth of the matter asserted, the hearsay rule has no application. *Mash v. Missouri Pacific Railroad Co.*, 341 S.W.2d 822, 827 (Mo.1960). Where the evidence is offered only to show that the statement has been made without regard to the truth or falsity of the statement itself, the evidence is primary and is not hearsay. *White v. St. Louis-San Francisco Railway*

*Co.*, 602 S.W.2d 748 (Mo.App.1980). Thus, if Keech testified concerning Troupe's utterance merely to show that Troupe had made the statement and had thereby expressed awareness of the fact recited, it was Keech's credibility in reporting the statement which was significant and the testimony was not hearsay.

The difficulty here is that Jordan did not offer Keech's evidence to demonstrate Troupe's knowledge at the time the statement was made, but at a much earlier date. In a colloquy before the bench after objection to the question had been lodged, Jordan's attorney stated, "It's for the further purpose of showing the motivating factor in Mr. Jordan's discharge by Mr. Troupe to be the disclosure by Mr. Apple or someone at the Half Agency of the fact that Mr. Jordan was registered there." Because the remarks of Troupe related by Keech were at a date after Jordan had been terminated, quite obviously it was intended that the jury believe Troupe's statement reflected information possessed by Troupe before a decision on Jordan's retention was made.

Non-assertive use of utterances to show a state of knowledge is not hearsay only if the purpose is to show knowledge of the declarant at the time the statement is made. If, however, the report of the declarant's utterance is offered to show prior knowledge, it is hearsay and can only come in under some exception to the hearsay rule. McCormick, Evidence § 249 at 591–592 (2d ed. 1972).[2] The burden of showing admissibility of hearsay testimony rests on the party who offers the evidence. *State ex rel. State Highway Commission v. Baker*, 505 S.W.2d 433, 436 (Mo.App.1974). After objection, a sufficient showing that some exception qualifies the hearsay testimony is a necessary predicate to receipt of the evi-

dence. *Gough v. General Box Co.*, 302 S.W.2d 884 (Mo.1957).

Jordan failed to qualify Keech's evidence under any hearsay exception. While counsel contended that the statement was intended to show Troupe's knowledge and was admissible as a state of mind exception, that argument was, as noted above, flawed. A declaration as to present state of mind is not hearsay. A declaration as to prior knowledge is, by definition, a state of mind and is also hearsay when reported secondhand and must be refused unless otherwise qualified as a hearsay exception. None was shown here and the objection to Keech's testimony was erroneously overruled.

The hearsay testimony by Jordan related his conversation with one Mitchell who in turn reported the overheard conversation of unidentified Troupe employees discussing statements by Troupe to the effect that Troupe had knowledge of Jordan's registration with the Half Agency. The objection to the evidence as hearsay was overruled after Jordan's attorney apparently attempted to qualify the hearsay on the ground that opposing counsel had opened the subject on cross-examination of Jordan.

In like manner to the evidence of Keech, Jordan was here attempting "to show Troupe's knowledge of Plaintiff's registration at Half, K.C." In context, it conclusively appears that the discussion with Mitchell occurred after Jordan's discharge. So, too, was the overheard conversation of Troupe employees. Less certain is when or to whom Troupe made the remarks generally attributed, but the brevity and indefinite character of the evidence precludes any assumption that Jordan was attempting to demonstrate Troupe's state of mind when the remarks were made. For the reasons previously given, the testimony was hearsay compounded because the evidence came not

---

2. *Wainwright v. Westborough Country Club*, 45 S.W.2d 86 (Mo.App.1932) holding on the authority of Corpus Juris that post rem statements may be received to show knowledge of the declarant has not been subsequently cited or followed except in *State v. Shain*, 340 Mo. 145, 101 S.W.2d 14 (1936) and *Henry v. First National Bank of Kansas City*, 232 Mo.App.

1071, 115 S.W.2d 121 (1938), both of which cases were limited to statements of agents admitted to show knowledge of a principal. The authority of *Wainwright* is neither persuasive, current nor controlling and, at best, reflects an aberrant view at odds with the general rule as noted in *McCormick*.

from one who purported to have heard Troupe's declaration, but from a witness twice removed.

The only effort to qualify the evidence was the abbreviated contention that the subject had been included in the examination of the witness by opposing counsel. Review of the transcript indicates that assertion to be without basis. Jordan had earlier been asked as to his direct knowledge of the reason for his termination at the Troupe firm and he had replied that he had none, only information from "somebody" long after the date of termination. The subject was not pursued further, only to confirm that Jordan's conversation had not been with Troupe. This exchange was insufficient to entitle Jordan to the benefit of the recounted thirdhand hearsay account and the objection should have been sustained.

Jordan suggests that even if the evidence reporting Troupe's statements was inadmissible hearsay, Apple and the Half Agency are not entitled to reversal because they suffered no prejudice. This follows, Jordan contends, because Troupe himself testified to knowledge of Jordan's registration with the employment agency. Counsel's statements at trial, however, belie the claim that the evidence was innocuous. In connection with the evidence from Keech, counsel argued that equivocal statements by Troupe were explained by this corroborative testimony and demonstrated the true reason for the discharge. Much was made in closing argument of the courage and truthfulness of Keech who, as a current Troupe employee, nonetheless saw his duty to relate what he had heard.

Evidence as to Troupe's knowledge of Jordan's employment registration was a vital element in the case. Incompetent evidence on a material issue is presumed to be prejudicial unless clearly shown to be otherwise. *State ex rel. State Highway Commission v. Baker, supra,* 505 S.W.2d at 437; *Casto v. Railway Express Co.,* 219 S.W.2d 276 (Mo.App.1949). We cannot here conclude that improper receipt of testimony from Keech and Jordan did not materially affect the merits of the case to the prejudice of Apple and the Half Agency.

The issue as to use of Troupe's deposition is more complex and, although not necessary for consideration in disposition of this appeal because of the trial errors previously noted, it will be examined for guidance of the parties on retrial. Additionally, the deposition bears on the subsequent point of contention that Jordan made no submissible case.

Apple and the Half Agency complain of error in permitting Jordan to impeach his trial witness Troupe by reading from the witness' deposition and by reading from a letter the witness wrote making changes in the deposition. In argument, the points are impermissibly expanded in contravention of Rule 84.04(d) and (e) by contentions that the reading of the deposition was improper because the witness was present to testify and material which was read was consistent rather than inconsistent. On this aspect of the case, conduct of the trial and the briefs tend more to confuse than to elucidate.

The circumstance for use of Troupe's deposition arose because Jordan had obtained from this source the unqualified acknowledgment of Troupe that information about Jordan's registration with the employment agency had come to him from Apple. Before trial, however, Troupe reflected on the matter and advised all concerned that his original statement was wrong and that he did not know the source of the information. Jordan was frustrated in his proposed use of the deposition because Troupe was available to testify, albeit not as Jordan had hoped.

Troupe was called as Jordan's witness but, throughout, Jordan's attorney regularly and repeatedly read from Troupe's deposition, much of the content being either consistent with Troupe's direct testimony or not contrary to facts elicited upon the current examination. In some particulars, notably the telephone conversation with Apple, the direct evidence and the deposition conflicted but Jordan made no claim then and makes none now that any such conflict

586

was unexpected. This rather remarkable use of the Troupe deposition followed a pre-trial discussion in chambers where the court indicated that Troupe could be impeached from the deposition. Counsel thereafter appear to have assumed that the deposition could be freely used, even on direct examination.

The rule as to impeachment of a witness called by the examiner as his own witness is discussed in *Woelfle v. Connecticut Mutual Life Insurance Co.*, 234 Mo.App. 135, 112 S.W.2d 865, 872 (1938). To warrant impeachment of one's own witness, there must be actual surprise at the testimony the witness gives, and then only where the evidence is prejudicial to the party who was misled into calling the witness. The justification is that absent entitlement to show contradictory prior statements, the adversary has gained an advantage in the case which he would not have enjoyed had he called the witness himself. The mere fact that a witness does not testify in favor of the party who has called him does not validate cross-examination or impeachment by the calling party. *State v. Gordon*, 391 S.W.2d 346, 349 (Mo.1965).

Jordan does not here claim nor could he claim surprise or entrapment regarding Troupe's evidence because advance notice of the memory lapse concerning the telephone call was circulated. The assertion by Apple and the Half Agency of error in permitting Jordan to interrogate Troupe by use of the deposition is meritorious. The point avails them nothing, however, because the objection was not lodged at trial.

Review of the transcript discloses that numerous objections were made on the use of the deposition, but none called to the trial court's attention the point now asserted and discussed in this opinion. The objections were first in general terms, referring to "improper impeachment" and "this is merely reading from the deposition of a witness who is here" and were later abandoned altogether when Apple and the Half Agency's attorney stated, "Your honor, my quarrel is not whether or not Mr. Partin can ask him about the questions and answers

set forth in the deposition * * *." The point was simply not preserved and Troupe's statement from the deposition regarding a telephone conversation with Apple was in evidence.

**IV—The Sufficiency Of Jordan's Evidence**

Apple and the Half Agency contend that Jordan did not offer substantial evidence of disclosure by them of Jordan's employment registration or of the causal relationship between that disclosure and Jordan's discharge, and that the court erred in submitting the case to the jury. They thereby argue that errors in the entry of judgment and dismissal of R–H Franchises are mooted.

■■■■ In determining whether plaintiff has made a submissible case, he is entitled to the most favorable view of all evidence and must be given the benefit of all favorable inferences to be drawn from the evidence. *Crouse v. Burkemper*, 593 S.W.2d 234 (Mo.App.1979); *Boyle v. Colonial Life Insurance Co. of America, supra*, 525 S.W.2d at 815. The appellate court must take plaintiff's evidence as true and give the plaintiff the benefit of all favorable evidence and every reasonable inference to be drawn from all the evidence while defendant's evidence is to be disregarded except insofar as it may aid the plaintiff's case. *Carter v. Boys' Club of Greater Kansas City*, 552 S.W.2d 327 (Mo.App.1977). Even though the plaintiff may arguably have failed to produce substantial evidence, the case should not be reversed outright without remand unless the record indicates that all available essential evidence has been fully presented and that no recovery could be had in any event. *Rockett v. Pepsi Cola Bottling Co.*, 460 S.W.2d 737 (Mo.App. 1970).

Jordan's claim was by nature not of a character to be established entirely by direct evidence. As to the relay of confidential information between the Half Agency and the Troupe firm, acquisition of that information was acknowledged by Troupe, the source at one time having been identified as Apple and later being asserted as unknown. An inference that the disclosure

was by the Half Agency was not unreasonable, particularly as the evidence suggested no other possibility. The causal relationship connecting the disclosure with the discharge was less readily identifiable by direct evidence depending as it did on motivation. Absent some unusual and unexpected candor, this element would normally be demonstrable only from evidence of surrounding circumstances.

 Facts necessary to recovery in civil cases may be proved by circumstantial evidence. *Moore v. City of Pacific,* 534 S.W.2d 486, 494 (Mo.App.1976). The existence of only circumstantial evidence on a material issue is no bar to recovery of and by itself. *McCarthy v. Wulff,* 452 S.W.2d 164, 168 (Mo.1970). Proof by circumstantial evidence must establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn and must rise above the stature of guesswork, speculation or surmise. *Willoughby v. Safeway Stores, Inc.,* 397 S.W.2d 748, 751 (Mo.App.1965); *Old Fortress, Inc. v. Myers,* 453 S.W.2d 692, 696 (Mo.App.1970).

 Circumscribed by the guides of the foregoing authorities, we are unable to conclude that the trial court erred in submitting Jordan's case to the jury or, of equal concern, that no recovery could be had in any event on remand. The multiple errors of the original trial require reversal, beyond question. Assessment of the possibility that evidence on retrial could establish Jordan's claim is not intended as a comment on the merits of the case nor a prediction of the outcome, but an explanation of the basis for disposition here in conformity with established precedent.

Reversed and remanded for a new trial.

All concur.